Mary Lee **ANDERSON**, Appellant,

v.

The **NEW PROPERTY OWNERS' ASSOCIATION OF NEWPORT, INC.,** Appellee.

No. 06–02–00152–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 1, 2003.

Decided Dec. 2, 2003.

Ann E. Webb, Buck, Keenan & Gage, LLP, Houston, for Appellant.

M. Susan Rice, M. Susan Rice, PC, Houston, for Appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Mary Lee Anderson, a property owner in the Newport Subdivison in Crosby, Texas, appeals the trial court's judgment in favor of the New Property Owners' Association of Newport, Inc. (hereinafter "NPOAN"), challenging the trial court's conclusions of law that NPOAN had the authority to enforce deed restrictions in

one certain section of the subdivision. She contends the trial court erred as a matter of law in concluding that NPOAN had the authority to reject her driveway plans, in failing to dismiss the suit for lack of standing or capacity, in ordering her to remove the driveway and restore her property, and in awarding attorneys' fees in favor of the prevailing NPOAN.

## I. Factual and Procedural History

### A. Development of and Restrictions in Newport Subdivision

The Diamondhead Corporation, now known as Purcell Company, Inc., began development in the 1970s of the Newport Subdivision in Crosby, Harris County, Texas, and, in 1979, filed deed restrictions binding on all lots in the subdivision (hereinafter "Declarations"). Currently, approximately 1,900 homes occupy fourteen sections of the subdivision. The Declarations for Section Eight created Newport Section Eight Property Owners, Inc. (hereinafter "Section Eight Owners' Ass'n"), and gave it the power to collect association dues and assessments. The instrument also created the Architectural Approval Control Committee (hereinafter "AC") and the Newport Yacht and Country Club, Inc. The AC was given the right to disapprove any plans and specifications submitted to it for construction or improvements in Section Eight, and was given the authority to make additional regulations regarding, among other things, "such surfaces, projections and appendages as will visibly affect the appearance of said buildings and structures." The AC was given very broad discretion in determining whether a structure or improvement would be "contrary to the interest, welfare or rights of all or any part of the owners of the lots, tracts or parcels adjacent there-

to," and its decision was deemed final. Article III, creating the AC, addresses procedures to fill vacancies in the AC, but does not speak to the dissolution of the AC or when the authority specifically given to the AC would transfer to another entity.

The Declarations for Section Eight authorize changes to the restrictions, effective on recordation of an instrument "setting forth such annulment, amendment or modification" and executed by seventy-five percent of the record owners of the property within the particular section. On October 2, 2001, pursuant to this procedure,[1] an amendment to the original restrictions applicable to Section Eight was recorded in the Harris County Property Records (hereinafter "Amendment to Declarations").

This amendment gave authority to manage Section Eight, including the authority to enforce deed restrictions, to the New Property Owners' Association of Newport. NPOAN was an organization, created by a group of Newport homeowners in 1996, to place control and operation into the hands of the owners and residents, replacing the organization that had been set in place by the original 1979 Declarations.

### B. Transfers of Ownership of Newport Property

In 1991, Diamondhead (Purcell Co.) sold its undeveloped lots to Albert Bacarisse, trustee for an unnamed entity, specifically subject to existing restrictions. The property was then sold to Newport Partners, Inc., also subject to then-existing restrictions.

In 1997, Newport Partners declared bankruptcy. NPOAN had been involved in litigation with Newport Partners, and NPOAN's claims were settled in the bank-

---

1. We need not address the validity of this procedure since it went into effect in October 2001 and does not involve the time on which we focus.

ruptcy proceedings when, in 1998, as part of the liquidation proceedings, the trial court ordered the sale of the remaining undeveloped property to Rampart Properties Corporation (hereinafter "Rampart"). In this sale, Rampart purchased the real property, together with all rights, if any, located in the Newport subdivision. Then, as part of the resolution of NPOAN's claims, Rampart and NPOAN entered into an agreement in which Rampart assigned to NPOAN certain rights with respect to the property (hereinafter "the 1999 Assignment").

## C. Driveway Construction and Approval Process

In 1990, Mary Lee Anderson and her former husband purchased two adjoining pieces of real property to use as a single home site in Section Eight of the Newport Subdivision. In 1991, Anderson and her husband applied to the Section Eight Owners' Association for permission to build a U-shaped driveway. The AC approved the driveway plans. Marital difficulties postponed the construction of the driveway.

On June 30, 2000, Anderson filed a second application with CIA Services, a company managing the subdivision on behalf of NPOAN. NPOAN claims it rejected her application due to a lack of information. Anderson claims she never received notice of denial and, therefore, acted pursuant to Article III of the Declarations, which deemed the plans were approved if the AC did not act on them within thirty days of submission. In March 2001, after having received appropriate permits from Harris County, Anderson began construction of the driveway.

On March 27, Anderson received a letter from NPOAN's attorney, directing Anderson to cease construction immediately because she lacked approval from the Architectural Control Committee of NPOAN. In response, on that same day,

Anderson submitted a second request for approval through CIA Services. A letter dated March 29, 2001, denied Anderson's request for approval of the U-shaped driveway construction. The letter offered no reason for the denial of Anderson's request.

Despite the letter of denial, Anderson resumed construction and, on March 30, 2001, NPOAN instituted this suit, seeking a temporary restraining order and injunction to stop construction. NPOAN's request for an injunction was denied on April 30, and a second request was also denied on December 3. Rampart, Newport Fund, L.L.C., and Newport Development Joint Venture intervened in the matter.

## D. Bench Trial

NPOAN filed suit as a Texas nonprofit corporation composed of persons who reside and own homes in the Newport Subdivision. Anderson entered a verified denial challenging NPOAN's standing and capacity. A trial to the court began on January 29, 2002. The trial court's judgment ordered Anderson to remove the driveway, restore the property, and awarded NPOAN attorneys' fees. On July 18, 2002, the trial court entered findings of fact and conclusions of law. Anderson now brings forth points of error challenging several of the trial court's conclusions of law.

## II. Preservation of Error

Anderson filed a verified denial in which she challenged NPOAN's standing and capacity to bring this suit. This pleading was sufficient to preserve error as to both issues. It was necessary that Anderson file such a challenge with the trial court in order to preserve for review the issue of NPOAN's capacity to sue. *See* TEX.R. CIV. P. 93(1). However, even if Anderson had not filed the verified pleading challenging NPOAN's standing, we

could properly decide the issue. Standing is a component of subject matter jurisdiction; it cannot be waived and may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440 (Tex.1993) (overruling *Tex. Indus. Traffic League v. R.R. Comm'n,* 633 S.W.2d 821, 822–23 (Tex.1982) (per curiam)); *Musgrave v. Brookhaven Lake Prop. Owners Ass'n,* 990 S.W.2d 386, 393 (Tex.App.-Texarkana 1999, pet. denied). We hold that both issues of standing and capacity are properly before us.

As to her other points of error regarding the trial court's conclusions of law, Anderson properly preserved error with her timely motion for new trial, which was denied by written order, complaining of the trial court's conclusions. *See McClary v. Thompson,* 65 S.W.3d 829, 833 (Tex.App.-Fort Worth 2002, pet. denied). Therefore, the issues presented by Anderson's points of error are properly before this Court. *See* TEX.R.APP. P. 33.1.

### III. Standard and Scope of Review

A trial court's conclusions of law cannot be challenged for factual insufficiency, but may be reviewed for correctness. *First Nat'l Bank v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.). We will not disturb a conclusion of law unless it is erroneous as a matter of law. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). We review conclusions of law under a de novo standard. *Richardson Indep. Sch. Dist. v. GE Capital Corp.,* 58 S.W.3d 290, 293 (Tex.App.-Dallas 2001, no pet.). Specifically, a trial court's conclusions regarding standing and capacity are questions of law. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928–29 (Tex.1998). Standing is determined at the time suit is filed in the trial court, and subsequent events

do not deprive the court of subject matter jurisdiction. *Tex. Ass'n of Bus.,* 852 S.W.2d at 445–46.

### IV. Analysis

#### A. NPOAN's Standing to Bring Cause of Action

Since standing is a threshold question, we will first address that issue. *See Exxon Corp. v. Pluff,* 94 S.W.3d 22, 26 (Tex.App.-Tyler 2002, pet. denied). Standing is a necessary component of subject matter jurisdiction. *Tex. Ass'n of Bus.,* 852 S.W.2d at 445–46. It is fundamental that only the entity whose primary legal right has been breached may seek redress for an injury. *Nobles v. Marcus,* 533 S.W.2d 923, 927 (Tex.1976). Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate. *Brunson v. Woolsey,* 63 S.W.3d 583, 587 (Tex.App.-Fort Worth 2001, no pet.). Relying on these principles, Anderson argues NPOAN lacked standing to sue to enjoin her from constructing the driveway.

An association has standing to sue when it satisfies a three-pronged test. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 447. First, the members must otherwise have standing to sue in their own right. *Id.* Second, the interests it seeks to protect must be germane to the organization's purpose. *Id.* Finally, neither the claim asserted nor the relief requested may require the participation of individual members in the lawsuit. *Id.*

Ordinarily, any person entitled to benefit under a restrictive covenant may enforce it. *See Calvary Temple v. Taylor,* 288 S.W.2d 868, 872–73 (Tex.Civ.App.-Galveston 1956, no writ). This means that, generally, an interested property owner may enforce a restrictive covenant. *Giles v. Cardenas,* 697 S.W.2d 422, 427 (Tex.

App.-San Antonio 1985, writ ref'd n.r.e.). In its petition, NPOAN alleges it is a nonprofit Texas corporation whose members consist of residents and owners of property in the Newport Subdivision. NPOAN members, as property owners, would have standing to bring this suit to enforce deed restrictions. NPOAN satisfies the first requirement for standing as an association.

Also, since NPOAN's purpose is aligned with that of its members, it satisfies the second prong of the test. In its articles of incorporation, NPOAN states its purpose is to:

[D]evote itself to the civic betterment of social improvement of the Newport property development in Harris County, Texas, and to the maintenance, operation, acquisition and ownership of the common areas and recreational facilities within the Newport subdivision, and to engage in any other activity permitted by law which may be useful in accomplishing any of the foregoing, with the best interests of the residents of Newport to be its primary consideration.

NPOAN's members certainly have an interest in the civic betterment and social improvement of life in their neighborhood. Applying the terms in a broad sense, we conclude that such a purpose could include protection of the property owners' interests in maintaining an aesthetically pleasing and well-defined appearance.

■ Further, the claim NPOAN asserts and the relief it requests do not require the participation of any individual members. When, as here, an association seeks declaratory or injunctive relief, it is reasonable to suppose that the relief sought will inure to the benefit of the injured members. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 448. Granting of the relief NPOAN sought will not require proof of any of the association members' circum-

stances. We hold that NPOAN, as an association, did hold, through its members, an interest which was allegedly violated by Anderson's construction of the driveway, establishing standing to bring suit for the violation.

We must now determine whether NPOAN sued Anderson in the proper capacity. In order to determine this issue, we need to examine the possible sources of the authority NPOAN exercised. To affirm the trial court's conclusion that NPOAN had capacity, we must determine that NPOAN had authority to bring this cause of action. *See Nobles*, 533 S.W.2d at 927.

### B. NPOAN's Capacity to Sue

1. As Provided in the Declarations for Section Eight

■ Article II of the Declarations provides a list of entities who shall have authority to enforce the restrictive covenants:

NOW THEREFORE, the Corporation being the sole owner of the property known as NEWPORT, SECTION EIGHT, a subdivision in Harris County, Texas, according to the Map hereinabove described, does hereby impose the following restrictions, covenants, and liens upon NEWPORT, SECTION EIGHT, which shall inure to the benefit of **the Corporation, its successors and assigns** and **to each and every purchaser of lands in NEWPORT, SECTION EIGHT, and their heirs, successors and assigns** and to the Architectural Committee, which is hereinafter designated, its successors and assigns, and to Newport Yacht and Country Club, Inc., its successors and assigns, and any one of said beneficiaries shall have the right to enforce such restrictions, covenants and liens using whatever legal method is

deemed advisable, including without limitation, injunctive relief; . . . .

(Emphasis added.) The Declarations also provide a procedure whereby Section Eight could amend or modify the restrictions and covenants of the original Declarations:

(B) Any one or more of the restrictions, covenants and liens herein contained may be annulled, amended or modified at any time by, but shall be deemed to have been annulled, amended or modified only upon, the recordation of an instrument in writing setting forth such annulment, amendment or modification and executed by the then record owner or owners (as shown by the Official Public Records of Real Property of Harris County, Texas, at the time of the filing of such instrument) of seventy-five (75%) percent of the real property comprising NEWPORT, SECTION EIGHT, (computed upon a square foot basis).

On March 30, 2001, when NPOAN filed suit, neither provision of the Declarations gave it the authority to enforce deed restrictions. It was not a party specifically given such authority. Further, the record establishes that the amendment procedure was not complete until October 2001, when the amendments to the Declarations for Section Eight were recorded.

### 2. By Assignment from Rampart

 Next, we look to the 1999 Assignment to determine whether Rampart assigned to NPOAN the authority to bring this suit. Contract construction is a question of law and one we will review de novo. *Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996). When construing the agreement, a court's primary concern is to ascertain and give effect to the parties' intentions as expressed in the agreement. *R & P Enters. v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518 (Tex.1980). To ascertain

the intent of the parties, we must examine the entire instrument and give effect to all the provisions so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). No single provision, when read alone, should control. *Id.*

As an assignee of Newport Partners, Article II of the Declarations specifically gives Rampart the authority to enforce deed restrictions. We turn to the 1999 Assignment to determine if Rampart assigned to NPOAN such a power. As mentioned, the purpose of the 1999 Assignment was to document the terms and conditions of the agreement of the parties concerning the settlement of the claims against Newport Partners and to transfer certain rights and obligations of the parties to NPOAN as part of a settlement. The Assignment provides:

*1. Assignment of Fees, Dues and Assessments.* Subject to the reservation of certain rights set forth herein and subject to applicable laws, rules and regulations, Rampart hereby grants and **assigns to NPOAN its rights to assess and collect all future monthly maintenance charges, fees, dues and assessments, arising or accruing after the date hereof, as provided in the applicable restrictive covenants and other subdivision documents governing the entire Newport subdivision** ("Newport") an exhibit map of which is attached hereto as Exhibit "A" (the "Newport Plat"). Any monthly maintenance charges, fees, dues or assessments relating to use of the golf course or club house facilities, located within Newport or any other public or private facilities which are or may in the future be located on real property within Newport on real property presently owned by Rampart, are excluded from this provision and are retained by Rampart. NPOAN agrees and acknowledges that **the as-**

signment to assess and collect future monthly maintenance charges, fees, dues and assessments set forth in this paragraph 1, is limited to any rights Rampart may have to collect future monthly maintenance charges, fees, dues and assessments, if any.

. . . .

4. Assumption of Obligations. NPOAN hereby assumes all obligations, responsibilities and duties of Rampart as assigned by the Trustee, in connection with the security, improvement, maintenance, beautification and other matters relating to the daily operation of the common areas of the Subdivision. In this regard, NPOAN agrees to operate and maintain Newport as a first class subdivision in the suburban Houston, Texas market place. Without in any way limiting the generality of the foregoing, NPOAN agrees to spend up to $150,000 as soon as is reasonably possible, to improve, upgrade, maintain and bring into good operating status and condition, the following items:

. . . .

5. Indemnification. The NPOAN hereby unconditionally and irrevocably, agrees to indemnify, defend and hold harmless Rampart and Rampart's officers, directors, employees, agents and contractors (collectively the "Rampart Parties" and individually a "Rampart Party") from and against any and [sic] Losses (as hereinafter defined) which Rampart may suffer or incur as a result of any demand, lawsuit or claim ("Claim") asserted against Rampart and / or any Rampart [sic] by any other person or entity for any of the obligations of the NPOAN described in Paragraph 4 arising out of or relating to any act or omission of NPOAN, its officers, employees, agents, contractors, (whether occurring in the past, present

or future) including, without limitation, a Claim arising out of or related in any way to (i) restrictive covenants, (ii) **any approval or rejection of lot owner's plans and specifications for improvements**, (iii) **any interpretation or enforcement of the restrictive covenants**, or (iv) any collection or enforcement actions hereunder or under the restrictive covenants.

(Emphasis added.) Anderson points to the absence in paragraph one of any language relating to enforcement of deed restrictions or AC authority and to the "in connection with" language of paragraph four and argues that the unambiguous language did not convey any authority with respect to enforcement of the nonconforming deed use restrictions. NPOAN's reading focuses on the "generality" language and also interprets the provision in light of paragraph five. NPOAN contends the Assignment could only obligate NPOAN to indemnify Rampart for activities NPOAN was authorized to undertake, which, according to the specific reference in paragraph five, includes the power to approve, reject, or interpret restrictive covenants.

Language in the Assignment does not sufficiently support the conclusion that Rampart assigned to NPOAN the right to sue in its own right to enforce deed restrictions. Clearly, paragraph five, addressing only the issue of indemnity, mentions the right to enforce restrictions, but this provision does not indicate a clear intention to convey these rights to NPOAN. Paragraph one is the provision that assigns rights to NPOAN, and it is completely silent as to the authority to enforce deed restrictions. Additionally, paragraph four, the provision through which NPOAN assumes any rights, does not mention the right to enforce deed restrictions. A reading of the instrument as a whole fails to indicate Rampart's intent

to convey to NPOAN its right to enforce deed restrictions.

3. As provided in the Texas Property Code

■■ NPOAN also contends the Texas Property Code confers on it the capacity to enforce deed restrictions in a subdivision. NPOAN relies on our opinion in *Musgrave* to assert that NPOAN has capacity to sue under Section 202.004(b) of the Texas Property Code. That provision provides:

(b) A property owners' association **or other representative designated by an owner of real property** may initiate, defend, or intervene in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument.

Tex. Prop.Code Ann. § 202.004(b) (Vernon 1995) (emphasis added).

Here, the record shows that Section Eight did not designate NPOAN as the property owners' association for that section until October of 2001, well after NPOAN instigated this suit. However, under Section 202.004(b), NPOAN need not be the property owners' association for Section Eight in order to bring this cause of action on behalf of other property owners. In this vein, NPOAN argues that Section 202.004 provides no procedure in order to designate a representative and that, therefore, an oral designation would suffice to designate NPOAN as the property owners' representative.

We conclude that, while Section Eight did not designate NPOAN as its property owners' association until October 2001 when the Amendments to Declarations were filed in Harris County records, property owners in the Newport Subdivision could designate NPOAN as a representative association under Section 202.004(b) of the Texas Property Code. *See Musgrave,* 990 S.W.2d at 394.[2] Eileen Fashoro, vice president of Rampart, testified that Rampart assigned to NPOAN the authority to enforce deed restrictions. While this testimony cannot support the conclusion, contrary to the written assignment, that Rampart *assigned* certain rights to NPOAN, it does indicate that Rampart, an owner of Section Eight property, designated NPOAN to sue on Rampart's behalf. That being the case, NPOAN could sue in its representative capacity to enforce deed restrictions in Section Eight in March 2001.

## C. NPOAN'S Exercise of Authority

We have determined that NPOAN had both standing and capacity to bring this suit against Anderson. Now, we are left to assess the action NPOAN took with respect to the driveway plans. The trial court concluded that, "Rampart assigned to NPOAN full power and authority to carry out all other terms and conditions of the declarations covering the Newport Subdivision including, without limitation, the enforcement of deed restrictions and approval required by the Architectural Control Committee."

By rejecting plans for construction of the driveway, NPOAN exercised architectural control authority, which the Declarations conferred on the AC. The Texas Property Code provides a standard for

---

**2.** In *Musgrave,* the property owners designated Brookhaven Lake Property Owners' Association to sue by a show of hands at an association meeting. *Musgrave v. Brookhaven Lake Prop. Owners Ass'n,* 990 S.W.2d 386, 394 (Tex.App.-Texarkana 1999, pet. denied). This showing was sufficient under Section 202.004(b) to designate the association as a representative with capacity to maintain suit to enforce deed restrictions. *See* Tex. Prop. Code Ann. § 202.004(b) (Vernon 1995); *Musgrave,* 990 S.W.2d at 394.

reviewing such an exercise of discretionary authority:

> (a) An exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory.

TEX. PROP.CODE ANN. § 202.004 (Vernon 1995).

■ Anderson challenges NPOAN's authority to reject her plans for construction. An appellate court has the duty to independently evaluate the trial court's findings on the law. *Pearce v. Pearce*, 824 S.W.2d 195, 199 (Tex.App.-El Paso 1991, writ denied). So, we will examine the sources from which NPOAN may have received this discretionary authority.

### 1. Assignment from Rampart

■ In much the same way that the Assignment fails to convey to NPOAN the right to act as property owners' association, it, too, fails to convey to NPOAN the right to reject plans for improvement to property in Section Eight. Looking again at the language of the Assignment, we see that paragraph five mentions the right to approve or reject. However, paragraph four, the provision in which NPOAN assumes rights, does not address these rights. Therefore, we conclude the instrument does not establish a clear intent on the part of Rampart to transfer to NPOAN the rights of an architectural control committee. That being so, NPOAN did not have the authority by way of the Assignment to reject Anderson's construction plans.

### 2. Automatic Vesting under Texas Property Code

■ The Texas Property Code provides for automatic vesting of an architectural control committee's authority to approve or deny applications for construction or modification of structures or improvements in a property owners' association on the occurrence of specified events. TEX. PROP.CODE ANN. § 204.011(b) (Vernon Supp.2003). An architectural control committee's authority, given to it by the original restrictions, will vest in the property owners' association when (1) the term of the architectural control committee authority expires as prescribed by the restrictions; (2) a residence on the last available building site is completed and sold; (3) the person or entity designated as the architectural control committee in the restrictions assigns, in writing, authority to the association; or (4) an assignee of the original holder abandons its authority for more than one year. *Id.* The pertinent provision is subparagraph four, regarding the abandonment of the original AC for over one year. Since there is evidence NPOAN had been exercising authority since 1996, we need to address the application of this provision.[3]

Here, the record does not reflect that the original AC dissolved or that any other conditions were met in order for such authority to vest automatically in NPOAN. Further, as established, NPOAN was not the acting property owners' association at the time of suit. Therefore, we cannot say the Texas Property Code confers any right on NPOAN to approve or reject any im-

---

3. The parties do not raise this issue. However, we address it as a part of our inquiry into the correctness of the trial court's conclusion of law. A conclusion of law that is found to be incorrect as a matter of law will not re-quire reversal if the findings of fact will support a correct legal theory. *Vinson v. Brown*, 80 S.W.3d 221, 230 (Tex.App.-Austin 2002, no pet.).

provements proposed by property owners in Section Eight.

The trial court's conclusion that NPOAN had the authority to approve or reject lot owners' plans for improvements in Section Eight is incorrect as a matter of law. The evidence before us establishes that NPOAN did not have authority to act as property owners' association or as an architectural control committee in Section Eight. Rejecting Anderson's driveway plans without having established authority to approve or reject plans for improvements in Section Eight represents an arbitrary and capricious exercise of discretionary authority.

■ Having concluded that NPOAN had standing to maintain this suit and capacity to sue on behalf of Rampart but acted without authority as an architectural control committee in Section Eight, we must address a further consideration. The original Declarations made it a violation of the deed restrictions to make certain improvements without approval of the original AC. NPOAN argues that, since it could sue to enforce deed restrictions, it could enforce this restriction against Anderson and require her to remove the unapproved driveway. However, the record does not show Anderson constructed the driveway contrary to the decision of a valid, active architectural control committee authorized to act in Section Eight. Therefore, we cannot say she violated a deed restriction in this manner. NPOAN, thus, cannot avail itself of such a position.

### D. Order to Remove Driveway

■ The granting or denial of a permanent injunction is within the trial court's sound discretion, and a reviewing court's inquiry is limited to the question of whether the trial court abused its discretion. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845,

848 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex.App.-Dallas 1989, no writ). The trial court abuses its discretion when it misapplies the law to the established facts or when the evidence does not reasonably support the conclusion that the applicant has a right of recovery. *Musgrave*, 990 S.W.2d at 398. Here, the order granting injunctive relief was based on a misapplication of the law, thus constituting an abuse of discretion.

### E. Attorneys' Fees

■ Anderson is not entitled to attorneys' fees in this matter. In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim. TEX. PROP.CODE ANN. § 5.006(a) (Vernon 1984). Only a party who successfully prosecutes a claim alleging breach of a restrictive covenant is entitled to recover attorney's fees. *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 291–92 (Tex. App.-San Antonio 1999, no pet.). Since Anderson did not assert this action, she is unable to seek attorneys' fees under this provision.

Anderson also seeks attorneys' fees under the Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). It provides that the court may award costs and reasonable and necessary attorney's fees as are equitable and just. *Id.* Declaratory relief is not available to settle disputes already pending before the court. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex.1990). In *Millard*, the Texas Supreme Court carved out an exception to this rule applicable when the counterclaim seeks a true declaration of an ongoing and continuing relationship, and when the

counterclaim asserts relief having "greater ramifications" than the original suit. *Id.* If the defensive declaratory action presents such issues, then the Uniform Declaratory Judgments Act can be an appropriate mechanism under which to award attorney's fees. *Id.*

Here, NPOAN's cause of action involves the same parties and same issues as alleged in Anderson's counterclaim seeking declaratory relief. Anderson's allegations are merely denials of NPOAN's cause of action. Therefore, Anderson would not be entitled to attorneys' fees under the Uniform Declaratory Judgments Act. Also, we cannot say Anderson's allegations qualify under the exception to this rule. Her allegations do not present any issues beyond those asserted by NPOAN or seek a declaration as to the parties' ongoing relationship. In fact, the parties' ongoing relationship is now defined since NPOAN completed the ballot drive and properly recorded the Amendments to the Declarations for Section VIII so as to gain the full authority of a property owners' association in that section of the subdivision.

## V. Conclusion

We conclude that, although NPOAN did possess standing and capacity to sue Anderson for violation of deed restrictions, it did not possess a right to deny Anderson's plans for improvement to the property. NPOAN was not authorized to exercise architectural control authority in Section Eight at the time Anderson constructed her driveway, and it did not show the construction was otherwise contrary to an action of an architectural control committee acting with authority in Section Eight. Therefore, NPOAN's rejection of Anderson's plans and its suit to remove the driveway represents an arbitrary and capricious act. The trial court's conclusions of law that conclude otherwise are incorrect as a matter of law. Accordingly, we reverse the judgment of the trial court, set aside the injunction, render judgment in favor of Anderson.