John COCO, Appellant,

v.

The PORT OF CORPUS CHRISTI AUTHORITY, Appellee.

No. 13–02–574–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

April 15, 2004.

Les Cassidy, Cassidy & Raub, Corpus Christi, for appellant.

J. Michael Mahaffey, Kleberg & Head, Arnold Gonzales Jr., Frank L. McNiff, Welder, Leshin & Mahaffey, Corpus Christi, for appellee.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

## OPINION

Opinion by Justice GARZA.

Appellant, John Coco, challenges a final summary judgment in favor of· appellee, the Port of Corpus Christi Authority, on Coco's two claims against the Port. In this case, we decide whether issues of material fact exist on an affirmative defense based on the borrowed servant doctrine where a contract designates control of an employee to a special employer but fact issues are raised as to whether the employee never-

theless remained under the actual control of the general employer. Because we conclude that under such circumstances a contractual designation of control is just one factor to be considered, summary judgment was improper in this case. We reverse the trial court's judgment and remand for further proceedings.

### A. Facts

The following facts are not in dispute. John Coco is a longshoreman. On February 24, 2000, he fell from a gantry crane and was injured while working for Dix Stevedores at a wharfage facility owned by the Port. The accident occurred when the crane on which Coco was standing collided with a front-end loader. At the time, the crane was owned by the Port and operated by Joe Hinojosa, an employee of the Port. Coco sued the Port on theories of common law negligence and premises liability. The Port moved for summary judgment based on the borrowed servant doctrine. The trial court ruled for the Port on both claims, and this appeal ensued.

### B. Standard of Review

When a trial court's order granting summary judgment is silent as to the reasoning upon which the ruling is based, as in this case, the appellate court should affirm the summary judgment if any ground advanced in the motion is meritorious. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Larson v. Family Violence & Sexual Assault Prevention Ctr.*, 64 S.W.3d 506, 515 n. 8 (Tex. App.-Corpus Christi 2001, pet. denied). In reviewing an award of traditional summary judgment, we must determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action or whether the defendant has conclusively established all elements of his affirmative defense. *Pech v. Estate of*

*Tavarez,* 112 S.W.3d 282, 285 (Tex.App.-Corpus Christi 2003, no pet.); *see also Crain v. Smith,* 22 S.W.3d 58, 59 (Tex. App.-Corpus Christi 2000, no pet.). We take as true all evidence favorable to the non-movant and indulge every reasonable inference in the non-movant's favor. *Trigo v. Munoz,* 993 S.W.2d 419, 421 (Tex.App.-Corpus Christi 1999, pet. denied). Our review is de novo. *Texas Commerce Bank–Rio Grande, N.A. v. Correa,* 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied).

### C. Analysis

#### 1. Liability for Negligence based on Respondeat Superior

■ The borrowed servant doctrine is an affirmative defense to tort liability based on respondeat superior. In its motion for summary judgment, the Port argued that the crane's operator, Joe Hinojosa, was a borrowed servant of Dix Stevedores and that the Port, therefore, could not be liable for his torts. As evidence, the Port submitted the Bulk Terminal Tariff 1–A. By its terms, the Tariff governs the relationships between the Port and all Users. "Users" is defined by the Tariff to include all vessels, their owners, agents, stevedores, contractors, and any other party. The Tariff also purports to govern the obligations and rights of Users with respect to the Equipment associated with the Bulk Terminal. "Equipment" specifically includes the gantry crane. Under the terms of the Tariff, "acceptance of possession and/or use of the Traveling Gantry Crane ... by User shall constitute acknowledgment of the existence of an agreement between User and ... [the Port] binding both parties to all terms and conditions herein." The Tariff also states, "It is understood and agreed that Equipment will be operated under the direction and control of the User and that

the User shall be responsible for the operation thereof...." According to the Port, these contract provisions gave control of Hinojosa to Dix Stevedores, and thus, under the borrowed servant doctrine, only Dix Stevedores can be held liable for torts committed in the course of his employment.

In response, Coco argued that summary judgment was improper because fact issues existed as to which party had control of Hinojosa. Coco contended that the Tariff's division of control was not dispositive. He argued that Hinojosa remained the Port's employee despite the Tariff because the Port had actual control based on the following factors: (1) the crane is owned by the Port and operated by Port employees; (2) the Port's general superintendent oversees crane operators to ensure safe operation of the cranes; (3) the instructions given to crane operators by the stevedore are limited to when to start and stop operating the crane and do not include directions on how to move it; (4) only Port employees are permitted to operate the crane and they must be approved by the Port's general superintendent; (5) the Port makes the services of crane operators available by the hour or by the ton; and (6) the gantry crane is a specialized piece of equipment and only trained employees of the Port are permitted to operate it. Coco provided summary judgment proof of each of the foregoing allegations.

On appeal, the Port argues that under this Court's holding in *Montemayor v. Chapa,* 61 S.W.3d 758, 765 (Tex.App.-Corpus Christi 2001, no pet.), the Tariff alone determines which party had control of the employee. In *Montemayor,* we noted that "[w]hen an individual works for a temporary employment agency and is hired by another company on a temporary basis, the contract between the agency and the other company controls the issue of right of control." *Id.* After noting that no con-

tract had been executed, we looked to the surrounding circumstances of the case to determine the issue of control for purposes of the borrowed servant doctrine. *See id.* The Port argues that because there is a contract in this case, *Montemayor* restricts our determination of control to the terms of the agreement. *See id.* We disagree.

We will not extend *Montemayor* to such an extreme. *Montemayor* is distinguishable from the instant case because *Montemayor* did not involve a contract designating control. *See id.* Thus, the language from *Montemayor* relied on by the Port is dictum and not law. To the extent *Montemayor* suggests that the exclusive determinate of control is always the language of a contract, we disapprove of its reasoning. It is well-settled law in Texas that contractual designations of control are not necessarily dispositive. For instance, in *Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992), the Texas Supreme Court noted that a "contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but it is not controlling." Ten years after *Perez*, the supreme court reaffirmed this proposition, stating:

Although a contractual assignment of the right of control can be dispositive of whether a regular employee of one party is a borrowed employee of another, it is not dispositive when there is conflicting evidence as to which entity had the right to control the details of the work in question. In such circumstances, the issue is left to the jury.

*St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 544 n. 92 (Tex.2002); *see Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964) ("It has been definitely established that a form of written agreement will not prevent the existence of a master-servant relationship when such contract is a mere sham or a cloak designed to conceal the true legal relationship between the parties.").[1]

 In today's opinion, we reaffirm the sound principle that a contractual designation of control will not establish borrowed servant status as a matter of law

---

1. Nearly all the intermediate courts of appeal that have considered the issue have reached similar conclusions. *See Faust v. Pumpco, Inc.*, 57 S.W.3d 620, 623 (Tex.App.-Texarkana 2001, pet. denied) ("An *additional factor* to be considered is any contract language between the two parties addressing the right to control.") (emphasis added); *Alice Leasing Corp. v. Castillo*, 53 S.W.3d 433, 440–41 (Tex.App.-San Antonio 2001, pet. denied) ("Where the right of control prescribed or retained over an employee is a controverted issue, it is a proper function for the fact-finder to consider what the contract contemplated or whether it was even enforced."); *Texas Indus. Contrs., Inc. v. Ammean*, 18 S.W.3d 828, 834 (Tex. App.-Beaumont 2000, no pet.) (deciding that "a contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but is not controlling" is a correct statement of the law); *Tex. Workers' Comp. Ins. Facility v. Pers. Servs.*, 895 S.W.2d 889, 893 (Tex.App.-Austin 1995, no pet.) ("A contract that is a mere sham designed to conceal the true legal relationship between the parties will not control employment status."); *Aguilar v. Wenglar Constr. Co.*, 871 S.W.2d 829, 831 (Tex.App.-Corpus Christi 1994, no pet.) ("Regardless of the contractual relationship between the general employer and the special employer, a 'borrowed servant' relationship may be established by showing the special employer's right of control to direct the details of work done by the borrowed employee."); *Highlands Underwriters Ins. Co. v. Martinez*, 441 S.W.2d 666, 667–68 (Tex.Civ.App.-Waco 1969, writ ref'd n.r.e.) (contract not conclusive); *see also Tex. Workers' Comp. Ins. Fund v. Byrd*, No. 07–01–0322–CV, *4–6, 2002 Tex.App. LEXIS 6816, at *14–15 (Amarillo September 19, 2002, no pet.) (not designated for publication) ("[I]f the contract was a mere sham or cloak designed to conceal the true legal relationship between the parties, the contract would not prevent the existence of a master-servant relationship."); *Byrd v. Marek Bros. Sys.*, No. 01–97–01236–CV, *1–2, 1998 Tex.App. LEXIS 3231, at *4 (Houston [1st Dist.] May 28, 1998,

where evidence shows that the parties acted to the contrary. *See Wolff,* 94 S.W.3d at 544 n. 92. Thus, even upon proof of a valid and enforceable contract that designates control, summary judgment is improper where the non-movant raises fact issues showing that the parties acted in a manner not contemplated by their contract. As the San Antonio court has explained:

> [I]f the contract says one thing, but the parties continually act in disregard of the contractual delineation of right of control, we are directed to simply consider the control provisions as one factor to weigh against any conflicting evidence of the exercise of that right to determine whether there is sufficient evidence to present the right of control issue to the fact finder.

*Alice Leasing Corp. v. Castillo,* 53 S.W.3d 433, 441 (Tex.App.-San Antonio 2001, pet. denied).

The factors enumerated in section 227(c) of the Restatement (Second) of Agency remain a useful aid in weighing the control retained by the general employer against the control exercised by the special employer. RESTATEMENT (SECOND) OF AGENCY § 227(c) (1958). These factors include: (1) the machine utilized by the borrowing employer is both owned by the general employer and operated by the general's employee; (2) the servant is expected to operate the machine in the way his general employer would expect while giving only the results called for by the borrower; (3) the general employer can substitute another employee at any time; (4) the servant is borrowed for merely a temporary period of time; (5) the employee has the skill of a specialist. *Id.; see Aguilar v. Wenglar Constr. Co.,* 871 S.W.2d 829, 831 (Tex.App.-Corpus Christi 1994, no pet.); *Lara v. Lile,* 828 S.W.2d 536, 538 (Tex.App.-Corpus Christi 1992, writ. denied). In response to the Port's motion for summary judgment, Coco provided the trial court with evidence tending to establish that these factors favor a finding that the Port and not Dix Stevedores had control of Hinojosa. Summary judgment for the Port was therefore improper because a fact issue exists as to which entity had control of the employee.

The Port, however, argues that this Court should not consider the affidavit of John Coco in determining whether a fact issue exists regarding control. Specifically, the Port argues that Coco's statement that "the stevedore did not have direct control over the gantry crane operations" is a self-serving and conclusory statement supported by no independent basis of fact. We disagree. Summary judgment may be based on affidavits from interested parties,

no pet.) (not designated for publication) ("When a contract between the general and special employer expressly grants the special employer the right to control the employee *and there is no contrary evidence of control,* the borrowed servant doctrine generally applies as a matter of law.") (emphasis added); *Hughes v. Compaq Computer Corp.,* No. 14-96-00225-CV, *2-3, 1996 Tex.App. LEXIS 5467, at *6-7 (Houston [14th Dist.] December 12,1996, no pet.) (not designated for publication) ("Even where the parties are operating under a contract expressly assigning the right of control, if the right of control retained over an employee is a controverted issue, the factfinder should consider what the contract contemplated and whether the contract was enforced"). *But see Anthony Equip. Corp. v. Irwin Steel Erectors, Inc.,* 115 S.W.3d 191, 200 (Tex.App.-Dallas 2003, pet. dism'd) ("Texas courts have consistently held that two employers can contractually agree to assign 'right of control.' With such an agreement, the court can decide the borrowed servant issue without considering the facts and circumstances of the project.") (citations omitted); *Castillo v. United States Fire Ins. Co.,* 953 S.W.2d 470, 473 (Tex.App.-El Paso 1997, no pet.) ("When a contract between the employers expressly provides that one or the other shall have the right to control, that provision determines who is the employer.").

but such affidavit evidence must be clear, positive, direct, credible, free from contradictions, and susceptible of being readily controverted. *See Gallegos v. Escalon,* 918 S.W.2d 62, 64 (Tex.App.-Corpus Christi 1996, no writ). John Coco's affidavit states:

> At the time I was injured, I was standing on the gantry crane, looking into the railroad cars. Another longshoreman was operating a front end loader. I had a radio. At no time did any longshoreman or other employee of the stevedoring company direct the movement of the gantry crane.... The crane moved under the controls of the Port of Corpus Christi employee.

This statement demonstrates Coco's personal knowledge. It is clear, positive, direct, credible, and free from contradictions. Furthermore, it could have been readily controverted by the Port. For instance, the Port could have supplied an affidavit by the crane operator stating that an employee of Dix Stevedores directed the movement of the crane. This the Port did not do. Coco's affidavit is valid summary judgment evidence.

Summary judgment on Coco's negligence claim was improper because the Port did not conclusively establish all elements of its affirmative defense. *See Pech,* 112 S.W.3d at 285.

### 2. Liability for Premises Defect

In his first amended original petition, Coco also claimed that the Port was liable for damages caused by his fall from the gantry crane because the Port negligently equipped and maintained the crane. He alleged that his injuries were "caused by a state created hazard." In its motion for summary judgment, the Port argued only that it did not owe Coco a legal duty in the "use and operation" of the gantry crane because the crane operator was the borrowed servant of Dix Stevedores. As Coco pointed out in his response, this argument did not address Coco's claim that his injuries were caused by the defective condition of the crane. The Port's motion for summary judgment made no arguments regarding Coco's cause of action for premises defect.

On appeal, the Port argues that summary judgment was proper because Coco's pleadings failed to assert a cause of action based on a premises defect or the defective condition of property. We cannot, however, uphold a summary judgment based on arguments that were not presented to the trial court by written motion. *See* Tex.R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) ("A motion must stand or fall on the grounds expressly presented in the motion."). The Port did not make these arguments in its motion for summary judgment, and it is therefore barred from raising them for the first time on appeal. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993) ("[A] summary judgment cannot be affirmed on grounds not expressly set out in the motion...."). We reverse the trial court's award of summary judgment on Coco's claim for premises defect because the trial court granted more relief than the Port requested in its motion for summary judgment. *See Muston v. Nueces County Sheriff's Dep't,* 122 S.W.3d 469, 471 (Tex.App.-Corpus Christi 2003, no pet.) ("A summary judgment that purports to dispose of causes of action not addressed in the summary judgment motion is erroneous.").

### D. Conclusion

We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.