NUMBER 13-03-713-CV
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 
HERMAN N. HARTSFIELD,                                                         Appellant,
v.
COUNTRY CLUB VILLAGE COMMUNITY COMMITTEE,            Appellee.



On appeal from the 377TH District Court
of Victoria County, Texas.




M E M O R A N D U M O P I N I O N

     Before Chief Justice Valdez and Justices Rodriguez and Garza

                             Opinion by Chief Justice Valdez
 
          Appellant, Herman N. Hartsfield, appeals the trial court's granting of a motion for
summary judgment in favor of appellee, Country Club Village Community Committee
(“Country Club”), as well as the granting of a permanent injunction against Hartsfield
enjoining him from using his property as a used car lot. Because we conclude that Country
Club could properly act to enforce the restrictive covenants in the title held by its
homeowner members, we affirm.
Background
          This suit involves restrictive covenants in the deed to Hartsfield's property, a parcel
of commercial property located in Victoria, Texas. The original grantor, G. L. Wigington,
deeded the property to Triple H Well Services, Inc. in 1978. The deed recited that it was
made and accepted subject to certain restrictions which were to be binding upon Triple H
and its successors and assigns forever. Among these restrictions was a provision that
commercial operations on the property could not include the sale of used cars. Triple H
then conveyed the property to J.D. and Alta Hunt, who subsequently conveyed to
Hartsfield. The deed from the Hunts to Hartsfield referenced the previously recorded
restrictive covenants. Hartsfield later leased his property to TRCKA Enterprises, which
then began using the property as a used-car lot.
          The original grantor, G. L. Wigington, also conveyed the property he owned
immediately adjacent to the commercial parcel. This second parcel became part of the
"Country Club Village," a residential subdivision. The recorded plan for the subdivision
noted that the lots in the community would be sold subject to restrictive covenants and a
homeowners’ association, the Country Club Village Community Committee, would be
responsible for enforcing these covenants. 
          Shortly after TRCKA Enterprises began operating its used-car business on
Hartsfield's property, the homeowners’ association filed suit for violations of the restrictive
covenants in Hartsfield's deed and requested a permanent injunction against such use of
the property. Country Club also moved for summary judgment. The trial court granted its
motion for summary judgment as well as its motion for permanent injunction. Hartsfield
now appeals this decision, arguing that the trial court erred in granting Country Club's
motion for summary judgment and injunction because (1) the homeowners' association
lacks standing to enforce the deed restrictions of a separate and distinct development, as
the association failed to prove that the restrictive covenants imposed on Hartsfield's
property were for the benefit of the Country Club Village homeowners, and, further, (2)
Country Club lacks the authority and capacity to initiate such a suit against him.


 
Summary Judgments and Restrictive Covenants
          Country Club filed a traditional motion for summary judgment. The standards for
reviewing a traditional motion for summary judgment are well established: (1) the movant
has the burden of showing that no genuine issue of material fact exists and it is entitled to
judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the nonmovant will be taken as true;
and (3) every reasonable inference must be indulged in favor of the nonmovant and any
doubts resolved in its favor. See Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548-49 (Tex. 1985); see also Ortega v. City Nat'l Bank, 97 S.W.3d 765,
771-72 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g). The function of summary
judgment is not to deprive litigants of the right to trial by jury but rather to eliminate patently
unmeritorious claims and defenses. Swiley v. Hughes, 488 S.W.2d 64, 68 (Tex. 1972);
Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.–Corpus Christi 2003, no pet.).
          In a summary judgment proceeding, a court may interpret and apply provisions of
a restrictive covenant when no factual issues exist. See Crispin v. Paragon Homes, 888
S.W.2d 78, 80-81 (Tex. App.–Houston [1st Dist.]1994, no writ). A restrictive covenant is
to be construed like any other written instrument: the appellate court’s first duty is to give
effect to the intent of the parties. See Wilmoth v. Wilcox, 734 S.W.2d 656, 658 (Tex.
1987). An appellate court will give words and phrases used in a covenant their commonly
accepted meaning. See id. at 657-58. 
          A trial court may enforce a restrictive covenant by injunction where a distinct or
substantial breach is shown, without regard to the amount of damages caused by the
breach. See Guarjado v. Neece, 758 S.W.2d 696, 698 (Tex. App.–Ft. Worth 1988, no
writ). In such cases, it is not necessary to show the existence of any particular amount of
damages or that the injury will be irreparable. See Shepler v. Falk, 398 S.W.2d 151, 154
(Tex. Civ. App.–Austin 1965, writ ref'd n.r.e.). The grant (or refusal to grant) of a
permanent injunction is ordinarily a decision within the trial court's sound discretion. See
Tex. Health Care Info. Council v. Seton Heath Plan, 94 S.W.3d 841, 851 (Tex. App.–Austin
2002, pet. denied). However, the abuse of discretion standard of review applied to
injunctions must be considered in conjunction with the summary judgment standard applied
to the relevant covenant. See Texas Health Care Info. Council, 94 S.W.3d at 851. 
Standing
          Hartsfield first raises the issue of Country Club's standing to bring this suit. Standing
is a threshold question and must be addressed de novo. See Anderson v. New Prop.
Owners' Ass'n of Newport, Inc., 122 S.W.3d 378, 384 (Tex. App.–Texarkana 2003, pet.
denied).
          Standing is a necessary component of subject matter jurisdiction. See id.; see also
Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445-46 (Tex. 1993). It is
fundamental that only the entity whose primary legal right has been breached may seek
redress for an injury. Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976); see Nootsie,
Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996). Without a
breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate. 
Brunson v. Woolsey, 63 S.W.3d 583, 587 (Tex. App.–Ft. Worth 2001, no pet.). 
          Ordinarily, any person entitled to benefit under a restrictive covenant may enforce
it. See Anderson, 122 S.W.3d at 384. Thus, an interested property owner has standing
to enforce a restrictive covenant. Id. An organization or association, however, has
additional restrictions it must meet before it may assert a claim. See id. An association
has standing to sue when it satisfies a three-pronged test. First, the members must
otherwise have standing to sue in their own right. See Tex. Ass'n of Bus., 852 S.W.2d at
447. Second, the interests it seeks to protect must be germane to the organization's
purpose. Id. Finally, neither the claim asserted nor the relief requested may require the
participation of individual members in the lawsuit. Id.
          We must first determine whether the property owners in Country Club Village
themselves would have standing to enforce the covenant, given that the deeds to their
property do not mention the restriction on the adjacent landowner. In Texas, a restrictive
covenant runs with the land when it touches and concerns the land, relates to a thing in
existence or specifically binds the parties and their assigns, is intended by the original
parties to run with the land; and when the successor to the burden has notice. Inwood N.
Home Owners Ass'n v. Harris, 736 S.W.2d 632, 635 (Tex. 1987). A restrictive covenant
that does not fulfill the technical requirements for running with the land can still bind
successors to the burdened land as an equitable servitude if the successor to the
burdened land took its interest with notice of the restriction, the covenant limits the use of
the burdened land, and the covenant benefits the land of the party seeking to enforce it. 
Reagan Nat’l Advertising of Austin, Inc. v. Capital Outdoors, Inc., 96 S.W.3d 490, 495 (Tex.
App.—Austin 2002, pet. denied). In every case where parties seek to enforce a restrictive
covenant, the burden of proof is upon the parties seeking enforcement to establish that the
covenant was imposed on the defendant's land for the benefit of land owned by them. Id.
(citing Davis v. Skipper, 83 S.W.3d 318, 321-22 (Tex. 1935)). 
          Both properties were originally held by a single grantor: G. L. Wigington. The deed
that granted Hartsfield’s predecessor-in-interest title to the property now held by Hartsfield
explicitly restricted the use and development of that property for the benefit of the adjacent
Country Club Village:
All buildings will compliment the entrance to “Country Club Village” . . . No
on-street parking will be allowed on Kelly Drive (a proposed street in “Country
Club Village”) . . . Grantee, its successors and assigns, shall erect no
structure East of a build-back line. . . . Said build-back line is imposed in
order to ensure unobstructed visibility for traffic moving into and out of
“Country Club Village” sub-division. . . 

The restrictions also included the following statement:
The following business establishments may not be established on the real
property herein conveyed:
 
          A. Repair garages or truck stops . . . 
          B. Night clubs.
          C. Motorcycle shops.
          D. Used car lots.
          E. Junk yards.
          F. Mobile home sales.
          G. Car washes.

          While this business-restricting provision itself did not explicitly mention the Country
Club Village, it was among a list of restrictions intended to benefit the Country Club Village
by restricting the potential activities and development on the commercial parcel. The
language of the covenants demonstrates that the restrictive covenants were intended by
the parties to benefit the Country Club Village parcel. See Reagan Nat’l Advertising, 96
S.W.3d at 495; see also Russell v. City of Bryan, 919 S.W.2d 698, 705 (Tex.
App.–Houston [14th Dist.] 1996, writ denied) (discerning intent of the parties from the
language used in the deed). 
          The deed to the property from G. L. Wigington to Hartsfield’s successor-in-interest
was also made binding on the “grantee, its successors and assigns forever.” The deed
from the Hunts to Hartsfield included an explicit reference to the restrictive covenants,
which had been recorded with the original deed, and Hartsfield has not claimed to have
lacked notice of the restrictions on his property. 
          We therefore conclude that Country Club has satisfied its burden to prove that the
restrictive covenants were intended by the parties to benefit the adjacent property of the
Country Club Village. We further note that the successors to the burdened property had
notice of the restrictive covenants, as the covenants were both recorded and mentioned
in the subsequent deed to Hartsfield, and the covenants specifically bound the successors
and assigns to abide by the stated provisions. See Inwood N. Home Owners, 736 S.W.2d
at 635 (requiring that successor to burden have notice). Also, because the covenant in
question prevents certain uses of the property, it also touches and concerns the land. See
Rolling Lands Invs., L.C. v. N.W. Airport Mgmt., L.P., 111 S.W.3d 187, 200 (Tex.
App.–Texarkana 2003, pet. denied) (“The restriction at issue here does touch and concern
the land because it limits the use to which the land can be put.”). Thus the restrictive
covenant in question could satisfy the requirements of either a covenant running with the
land or equitable servitude; in either case, the property owners of Country Club Village, as
persons entitled to benefit under the restrictions, had standing to enforce the covenant. 
See Anderson, 122 S.W.3d at 384. 
          We now must determine Country Club’s purpose as an organization. Id. (requiring
that the interest sought to be protected be germane to the organization’s purpose). The
recorded document outlining Country Club’s duties as a committee (“the Committee”) does
not have an overarching statement of purpose, but it does show that Country Club’s intent
is to preserve the aesthetics of the subdivision by regulating various restrictive covenants
placed on the homeowners themselves, enforcing lot maintenance, and by collecting and
managing a “maintenance fund.” The maintenance fund is explicitly to be “used for the
benefit of all owners in Country Club Village and such sum shall be expended by the
Committee for any purpose which in its judgment will be most effective in maintaining the
property values in Country Club Village.” The Committee is also authorized to “enforce,
by appropriate proceedings, these covenants and restrictions.”
          While the Committee is not explicitly authorized to enforce restrictive covenants
pertaining to property outside the subdivision, it is allowed to make any expenditure
necessary in order to preserve the property values of the homes in the subdivision. Thus,
we perceive that the filing of this lawsuit, which was intended to result in the permanent
cessation of a use of adjacent land which could detrimentally affect the property values of
the Village, was germane to the organization’s purpose. Finally, we note that neither the
claim nor the relief require any individual participation by the homeowners. See id.
(requiring that individual members not have to participate). A permanent injunction will only
require affirmative action on the part of Hartsfield and will benefit all homeowners alike;
whether they participate individually or through a representative should not affect the
outcome. Thus, we conclude that Country Club had standing to bring this suit, and we
overrule Hartsfield’s first issue on appeal. 
Authority and Capacity
          Hartsfield next asserts that Country Club had no authority or capacity to initiate this
suit. To support this contention, Hartsfield points to the Texas Property Code and to
Country Club’s own charter, arguing that neither of these authorities allows a suit against
an outside property owner. 
          The property code provides that:
[a] property owners’ association or other representative designated by an
owner of real property may initiate, defend, or intervene in litigation or an
administrative proceeding affecting the enforcement of a restrictive covenant
or the protection, preservation or operation of the property covered by the
dedicatory instrument.

Tex. Prop. Code Ann. § 202.004(b) (Vernon 1995). 
          The recorded charter of Country Club, in its “Enforcement” section, notes
“[e]nforcement shall be by proceedings at law or in equity against any person or persons
violating or attempting to violate any covenant either to restrain violation or to recover
damages.”
          While Hartsfield is correct in noting that neither of these provisions expressly allows
a suit against an outside property owner who is in violation of a restrictive covenant that
is not mentioned in the association’s own restrictions, we also note that neither the property
code nor the recorded charter prevent such suits. Indeed, as we discussed above, Country
Club is authorized by the recorded charter to make any expenditure deemed necessary to
preserve the property values in the Village; we surmise that this could include the costs of
initiating litigation and obtaining an injunction. Furthermore, the property code allows the
initiation of litigation in order to “protect” or “preserve” property; this litigation was clearly
intended to protect and preserve the aesthetic value of the property in the Village by
eliminating specific types of businesses on adjacent land. See id. 
          In a further argument against Country Club’s authority, Hartsfield cites to an affidavit
from Bruce Eppinger attached to Country Club’s motion for summary judgment, which
states: “I am a home owner in Country Club Village, and I am a member of the
[Committee]. The Committee is the authorized representative of the homeowners of
Country Club Village.” Hartsfield complains that this statement is conclusory and therefore
the affidavit is inadmissible to show that Country Club is the representative of the
homeowners. See Krishnan v. Law Offices of Preston Henrichson, P.C., 83 S.W.3d 295,
299 (Tex. App.–Corpus Christi 2002, pet. denied) (noting that conclusory statements are
not competent summary judgment evidence).
          We disagree. The statement simply establishes that a relationship exists between
the homeowners and the Committee; this relationship is further evidenced by the recorded
charter establishing the Committee’s role. Hartsfield provides no evidence to controvert
this established relationship. See Coco v. Port of Corpus Christi Auth., 132 S.W.3d 689,
693-94 (Tex. App.–Corpus Christi 2004, no pet.) (“Summary judgment may be based on
affidavits from interested parties, but such affidavit evidence must be clear, positive, direct,
credible, free from contradictions, and susceptible of being readily controverted.”). The
affidavit is admissible as evidence of Country Club’s authority to act on behalf of its
members. See id. 
          Thus, we find that Hartsfield’s arguments on capacity and authority lack merit, and
they are accordingly overruled. 
Conclusion
          We have overruled each of Hartsfield’s issues on appeal, and we have determined
that there are no genuine issues of material fact and Country Club was entitled to judgment
as a matter of law. We further conclude that, given the propriety of the summary judgment,
the trial court did not abuse its discretion in granting Country Club’s request for a
permanent injunction.
          Accordingly, the judgment of the trial court is affirmed.  
          


                                                                                                                   
                                                                        Rogelio Valdez,
                                                                        Chief Justice

 

Memorandum Opinion delivered and filed
this 21st day of April, 2005.