ACCEPTED
01-14-00562-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/9/2015 5:08:15 PM
CHRISTOPHER PRINE
CLERK

# NO. 01-14-00562-CV

| | |
|---|---|
| IN THE<br>FIRST COURT OF APPEALS<br>HOUSTON, TEXAS | FILED IN<br>1st COURT OF APPEALS<br>HOUSTON, TEXAS<br>1/9/2015 5:08:15 PM<br>CHRISTOPHER A. PRINE<br>Clerk |

ZUEHL LAND DEVELOPMENT, L.L.C., DOROTHY GOLDING, et al.,

*Appellants*

v.

ZUEHL AIRPORT FLYING COMMUNITY OWNERS ASSOCATION, INC.,

*Appellee*

# BRIEF OF APPELLEE,
# ZUEHL AIRPORT FLYING COMMUNITY
# OWNERS ASSOCATION, INC.

ROBERT L. WILSON III
State Bar No. 50511773
**R L WILSON LAW**
111 W. Olmos Drive
San Antonio, Texas 78212
(210) 223-4100
(210) 223-4200 (telecopier)
Email:  rlw3d@sa-law.com

# ATTORNEY FOR APPELLEE,
# ZUEHL AIRPORT FLYING COMMUNITY OWNERS ASSOCIATION,
# INC.

## IDENTITY OF PARTIES AND COUNSEL

The following is a list of all parties, and the names and addresses of those parties' counsel.

### Parties to Appeal

| | |
|---|---|
| Zuehl Land Development, L.L.C. | Appellant/Plaintiff |
| Dorothy Golding | Appellant/Plaintiff |
| Diane Wieman | Appellant/Plaintiff |
| Zuehl Airport Flying Community Owners Association, Inc. | Appellee/Defendant |

### Counsel for Parties to Appeal

| | |
|---|---|
| William D. Crist<br>The Crist Law Firm, PLLC<br>3123 N.W. Loop 410<br>San Antonio, Texas 78230 | Trial and Appellate Counsel for Appellants/Plaintiffs Dorothy Golding, Zuehl Land Development, L.L.C. and Diane Wieman |
| Robert L. Wilson III<br>R L Wilson Law<br>111 W. Olmos Drive<br>San Antonio, Texas 78212 | Trial and Appellate Counsel for Appellee/Defendant, Zuehl Airport Flying Community Owners Association, Inc. |

### Non-Appealing Parties

| | |
|---|---|
| Phoenix Air Transport, Inc. | Non-Appealing Plaintiff |
| James MacIvor | Non-Appealing Plaintiff |
| David Goad | Non-Appealing Plaintiff |
| Walter Schmidt, deceased | Non-Appealing Plaintiff |

**TABLE OF CONTENTS**

                                                        **Page**

IDENTITIES OF PARTIES AND COUNSEL .......................................................... i

TABLE OF CONTENTS .................................................................................. ii

TABLE OF AUTHORITIES................................................................................ iv

STATEMENT OF THE CASE ........................................................................... vi

ISSUES PRESENTED ..................................................................................... ix

STATEMENT REGARDING ORAL ARGUMENT ............................................... ix

STATEMENT OF FACTS ................................................................................. 3

    A.    Background Facts ...................................................... 3

    B.    Relevant Procedural History ......................................... 8

SUMMARY OF THE ARGUMENT ..................................................................... 16

ARGUMENT AND AUTHORITIES...................................................................... 17

    I.    The Trial Court Properly Denied Appellants' Request for Attorneys' Fees Because Appellants were not a "Prevailing Party" in the Trial Court……......…………………………………………………17

        A.    The Trial Court Expressly DENIED Appellants' Claims for Breach of Restrictive Covenant and Rendered a TAKE NOTHING Summary Judgment.

        B.    The Relief, If Any, Obtained By Appellants Was Not Based on Court Determination of Breach of Any Restrictive Covenant

        C.    Every Substantive Order Entered in The Litigation Authorized, Validated and Protected the Fence Erected by the Association

        D.    All Parties had Legitimate Interests to pursue.

II.     The Trial Court Properly Imposed Sanctions on Golding, and Did Not Abuse its Discretion, Based Upon Clearly-Established Misconduct as a Litigant……………………………………..…………26

   A. Golding Failed to Produce any Evidence to Rebut Evidence of Her Misconduct, or that Demonstrated Good Faith

   B. Although Present When the Court was Considering the Bad Faith and the Imposition of Sanctions Against Her, Golding Declined to Testify in her Own Defense, or Call Any Witnesses

   C. Golding Has Waived Any Objection to Excessiveness of the Sanctions Award by Failing to Raise That Issue in the Trial Court

   D. The Trial Court Did Not Abuse Its Broad Discretion In Sanctioning Golding Based Upon the Seriousness of Golding's Violations

CONCLUSION AND PRAYER ................................................................ 41

CERTIFICATE OF COMPLIANCE .......................................................... 42

CERTIFICATE OF SERVICE ................................................................. 42

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*,
122 S.W.3d 378, 390 (Tex.App.-Texarkana 2003, pet. denied) .................. 19

*Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*,
249 S.W.3d 380, 387 (Tex. 2008) ..................................................... 32

*Brooks v. Northglen Ass'n*.
141 SW 3d 158 (Tex. 2004) ............................................................ 25

*Cire v. Cummings*,
134 S.W.3d 835 (Tex. 2004) ........................................................... 26

*Dear v. City of Irving*,
902 S.W.2d 731, 739 (Tex.App.-Austin 1995, writ denied) ..................... 18

*E.I. du Pont de Nemours & Co. v. Robinson*,
923 S.W.2d 549 (Tex. 1995) .......................................................... 33

*Farrar v. Hobby,*
406 U.S. 103, 111-12 (1992) .......................................................... 20

*FDIC v. Graham*,
882 S.W.2d 890, 900 (Tex.App.-Houston [14th Dist.] 1994, no writ)......... 18

*GTE Commc'ns Sys. Corp. v. Tanner*,
856 S.W.2d 725, 730 (Tex.1993) ..................................................... 29

*Intercont'l Group P'ship v. KB Home Lone Star, L.P.*,
295 S.W.3d 650 (Tex.2009) ............................................................ 19

*Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*,
149 S.W.3d 863, 867 (Tex.App.-Dallas 2004, no pet.) ........................... 18

*Low v. Henry*,
221 S.W.3d 609 (Tex. 2007) ........................................................... 26

*McCain v. NME Hosps., Inc.,*
   856 S.W.2d 751, 757 (Tex. App.-Dallas 1993, no writ) ………………… 34

*Meyerland Cmty. Improvement Ass'n v. Belilove,*
   624 S.W.2d 620, 620-21 (Tex.App.-Houston [14th Dist.] 1981,
   writ ref'd n.r.e.) ........................................................................ 19

*Nath v. Texas Children's Hosp.,*
   2014 Lexis 756…...……………………………………………………..29

*Pebble Beach Prop. Owners' Ass'n v. Sherer,*
   2 S.W.3d 283, 291-92 (Tex.App.-San Antonio 1999, pet. denied) ............. 19

*Spohn Hosp. v. Mayer,*
   104 S.W.3d 878, 882 (Tex. 2003) ............................................... 37

*TransAmerican Natural Gas Corp. v. Powell,*
   811 S.W.2d 913, 917 (Tex. 1991) ............................................... 36

*Unifund CCR Partners v. Villa,*
   299 S.W.3d 92, 97 (Tex. 2009)…………………………………….........29

## STATUTES

TEX. PROP. CODE § 5.006…………………………………………….............8
TEX. CIV. PRAC. & REM. CODE § 37.001. et. seq……………………………….22

## RULES

TEX.R.CIV.P. 13 .............................................................................. 33
TEX.R.CIV.P. 166a(h) ..................................................................... 39
TEX.R.CIV.P. 215 ............................................................................ 38

v

# STATEMENT OF THE CASE

**Nature of the Case:** Zuehl Airport Flying Community Owners Association, Inc. ("ZAFCOA") filed suit in 2008 seeking injunctive and other relief against various individuals and their corporate alter-egos arising from such individuals' tampering with and destroying a boundary fence constructed by the Association pursuant to the express terms of a prior Judgment of the Guadalupe County trial court. That relief – and the legal sanctity of the fence – was upheld by the trial court by way of a Temporary Injunction, and after referral to arbitration by a Modified Temporary Injunction entered by the arbitrator. Following remand of the arbitration back to the trial court, the Court adopted the arbitrator's Modified Temporary Injunction, and, again, upheld the legality of the fence. The fence remained in place until it was voluntarily removed by ZAFCOA upon a determination that it was no longer desirable (and prior to entry the Partial Summary Judgment and/or Final Judgment) relied upon by Appellants.

In a separate suit, that was ultimately consolidated with ZAFCOA's request for judicial intervention to stop the destruction of ZAFCOA's boundary fence, Appellants filed suit alleging that the fence was constructed in violation of applicable restrictive covenants.

On June 27, 2012, the Court entered a Partial Summary Judgment in the consolidated suit, thereby resolving all controversies, expressly denying various causes of action asserted by and between the parties, and disposing of all parties' claims, save and except ZAFCOA's entitlement to a Sanctions Award against Golding, and the parties' competing claims for attorneys' fees under Tex.Prop. Code § 5.006.

The trial court liquidated the Sanctions Award against Golding on October 31, 2013, and entered Final Judgment on May 21, 2014, providing that all parties bear their own costs and attorneys' fees.

**Trial Court:** The Honorable Gary Steel, Judge, 25th District Court, Guadalupe County, Texas.

vi

**Trial Court Action:** On December 7, 2011, the trial court conducted a hearing on ZAFCOA's Objections to Evidence (including sworn Affidavits) submitted by Appellants in connection with the parties' competing Motions for Summary Judgment. Although present in the courtroom during such hearing, Golding failed to testify in her own defense. At the conclusion of that hearing, the Court determined that Golding had engaged in litigation abuse in connection with pleadings she filed, her discovery responses, her affidavit testimony and her deposition testimony. As such the Court made a bench announcement that she should be sanctioned, but reserved for future consideration the amount of sanctions to be imposed.

On June 27, 2012, the trial court entered a Partial Summary Judgment that was agreed-upon and jointly submitted by all parties. In that Partial Summary Judgment, the Court expressly DENIED and entered a TAKE NOTHING Judgment on: (i) all parties' tort claims; (ii) all parties' claims for "breach of contract (Restrictive Covenant)"; and (iii) all parties' requests for injunctive relief. In that same Partial Summary Judgment the Court made certain declarations, and expressly "reserved for future consideration": (i) the parties' competing claims for attorneys' fees; and (ii) the amount of the sanction to be paid by Golding arising from her earlier-determined litigation and discovery misconduct.

On September 17, 2012, the trial court entered its written "Order on Defendant's Objections to Summary Judgment Evidence." In such Order – which resulted from the hearing conducted on December 7, 2011 -- the trial court found that Dorothy Golding (who was present in the courtroom but failed to testify) should be sanctioned for various litigation abuses, but reserved the amount of sanctions for later determination.

On September 16, 2013, the trial court conducted a hearing for the purpose of considering and liquidating the amount of attorneys' fees and costs to be assessed against

Golding as a sanction for the litigation abuses and misconduct she was previously-determined to have committed. Golding did not attend the September 16, 2013 hearing, and her counsel did not cross-examine ZAFCOA's witness testimony or object to documentary evidence offered to the Court. The Court took the matter under advisement, and on October 31, 2014, entered a Sanctions Order awarding ZAFCOA $30,528.00 as a sanction against Golding under Tex. R. Civ. P. 13, 215 and 166a(h), and the Court's inherent power.

On May 21, 2014, the Court entered its Final Judgment in the consolidated case. The Final Judgment: (i) adopted and incorporated the June 27, 2012 Agreed Partial Summary Judgment; (ii) DENIED all parties' claims for costs and attorneys' fees; (iii) ORDERED that all parties bear their own costs and attorneys' fees; and (iv) incorporated the October 31, 2013 Sanctions Order (thereby making it final).

No Motion for New Trial or other request to reform, modify or correct the Final Judgment was filed by Appellants prior to filing this appeal.

# ISSUES PRESENTED

1. Did the trial court err by denying the parties' competing claims for attorneys' fees and costs under Tex.Prop.Code § 5.006, and finding that Appellants did not "prevail?"

2. Did the trial court abuse its discretion in imposing sanctions against Golding as the result of her litigation and discovery abuses?

# STATEMENT REGARDING ORAL ARGUMENT

Appellee believes oral argument will not significantly aid this Court in considering and determining the legal issues presented in this matter. The matters at issue are all well established such that the Court of Appeals would not benefit from oral argument. TEX.R.APP.P. 39.

IN THE
FIRST COURT OF APPEALS
SAN ANTONIO, TEXAS

ZUEHL LAND DEVELOPMENT, L.L.C., et al.

*Appellants*

V.

ZUEHL AIRPORT FLYING COMMUNITY
OWNERS ASSOCIATION, INC.

*Appellee*

**BRIEF OF APPELLEE,
ZUEHL AIRPORT FLYING COMMUNITY
OWNERS ASSOCIATION, INC.**

TO THE HONORABLE COURT OF APPEALS:

Appellee/Defendant, Zuehl Airport Flying Community Owners Association, Inc., respectfully presents its brief. For the sake of clarity, all Appellants will be collectively referred to as "Appellants," while Appellant, Dorothy Golding, individually (as the only party who appeals the trial court's sanctions award), will be referred to as "Golding." Appellee, Zuehl Airport Flying Community Owners Association, Inc., will be referred to as "ZAFCOA" or "Appellee." The clerk's record will be cited as [CR __]. The supplemental clerk's record will be cited as

[SCR ___].  The reporter's record of the hearing will be cited as [RR ___] with an

indication as to volume denoted by "V."

## STATEMENT OF FACTS

### A.    Background Facts

This appeal is the most recent chapter in a series of litigations between these same and/or associated parties arising out of planning, platting, conveyancing and drafting deficiencies created by Dorothy Golding's development of the Zuehl Airfield subdivision of Guadalupe County, Texas. Prior actions arising from these defects have been heard in Texas state district courts in Guadalupe and Bexar Counties, the U.S. District Court for the Western District of Texas (San Antonio division), various Texas courts of appeals, and by two (2) separate arbitrators.

The litigation campaign represented by the case at bar is a seven year ordeal, which – in addition to expenditure of substantial attorneys' fees and costs by all involved -- has resulted in:

- Entry of four (4) separate orders upholding the ability of the Appellee to maintain the fence that is at the heart of this dispute;

- Entry by the trial court of an agreed Partial Summary Judgment whose express terms **denied** Appellants' claims for breach of the applicable restrictive covenant and vindicated various of the Appellee's claims, including its right to erect and maintain a fence and restrict access to the Zuehl Airport Flying Community, P.U.D.  Subdivision [CR 880-886]; and

- Imposition of litigation and discovery abuse sanctions of $30,528.00 against Appellant, Golding, by the same trial court judge who has presided over the parties' litigation campaigns for their duration, and,

3

as such, maintains intimate familiarity with the parties.[1] [CR 969-980].

ZAFCOA is the property owners' association for the Zuehl Airport Flying Community, P.U.D. (the "subdivision" or "Zuehl Airport subdivision"), who, pursuant to Tex. Prop Code § 202.001(2) and the applicable dedicatory instrument[2] manages and regulates the platted Zuehl Airport subdivision of Guadalupe County, Texas.

On or about April 3, 2008, ZAFCOA erected a fence separating a substantial portion of the platted subdivision (sometimes referred to as "Unit 1") from un-platted property owned by various persons and/or their corporate alter egos. Such un-platted property abuts – but is distinctly and undisputedly beyond -- the eastern edge of the platted subdivision, and is commonly referred to as "Lands Reserved for Future Development" or "LRFD."

The "Lands Reserved for Future Development" are comprised of various parcels of real property which were never platted, and never incorporated into the platted Zuehl Airport subdivision. Appellants (but not Appellee) commonly refer to the collective "Lands Reserved for Future Development" as "Unit 2" of the subdivision because the "Lands" were designated by Appellant Golding (as the original developer of the subdivision) as such on the subdivision's Preliminary

---

[1] For more than a decade, the Honorable Gary Steel has presided over various litigations between these parties. His involvement in the numerous legal disputes amongst the Zuehl Airport property owners pre-dates representation by any of the current attorneys for the parties.

[2] Referred to herein as the "Declaration" or the "restrictive covenants."

Overall Development Plan ("POADP") that she filed with the City of San Antonio.[3]

However, notwithstanding Golding's designation of the "LRFD" as "Unit 2" of the subdivision – and her express representations that she intended to develop/plat and incorporate such territory into the platted subdivision -- Golding unilaterally and permanently abandoned all efforts to plat the "LRFD" several years before the commencement of the litigation giving rise to this appeal. As such, the "LRFD" remain un-platted to this day, and will so remain for the foreseeable future because they have been sold to third-parties.

Golding's failure to develop the subdivision as planned, her inclusion of vagaries and ambiguities in the applicable restrictive covenants that she (as Declarant) recorded in connection with the subdivision,[4] and her subsequent efforts to exploit these self-created deficiencies[5] resulted in prior litigation filed by ZAFCOA on November 12, 2003, under Cause No. 03-1901-CV. [CR 97]. That

_____

[3] Although located in Guadalupe County, the subdivision is situated with the Extra-territorial jurisdiction ("ETJ") of the City of San Antonio, Texas.

[4] As the Declarant, Golding caused the Declaration to be drafted and recorded. Since recording the Declaration she has commenced various legal actions – including this suit -- arising from drafting deficiencies contained in that very document.

[5] For example, Appellants allege that construction of the subject fence violated the applicable Declaration because of its proximity to a taxiway. However, Golding's unilateral decision to sell the unplatted LRFD to a third-party who had no obligation to develop or plat those lands in accordance with her POADP changed the planned boundaries of the subdivision. This sale, and Golding's failure to develop and plat the LRFD, created an internal conflict within the express language of the Declaration, which both (i) authorizes ZAFCOA to secure the subdivision, including by constructing a boundary fence (Section Ten); and (ii) prohibits placement of objects near taxiways. This conflict occurred because Golding's sale of the LRFD without platting or completing construction of the roadways (in "Unit 2") shown on the POADP caused what was an internal taxiway to become a perimeter road on the subdivision boundary.

litigation involved challenges (by Golding and others) to a fence previously erected in approximately the same location as the fence at issue in this suit.[6] Ultimately, the 2003 lawsuit was settled at a marathon mediation session, and an Agreed Judgment incorporating the settlement terms – including an express right of ZAFCOA to erect a fence separating the platted subdivision from the LRFD -- was entered by the Guadalupe County District Court. [RR V.10 pp. 6-13].

In reliance upon the 2003 Agreed Judgment entered in cause No. 03-1901-CV and the express provisions of Section Ten of the applicable declaration/restrictive covenants, ZAFCOA constructed the fence at issue in this suit (the "subject fence"). Said fence was built entirely upon "common area" property owned by ZAFCOA (six inches inside the eastern boundary of the platted subdivision, with no portion of situated upon the "LRFD" or any land owned by any Appellant) and constitutes ZAFCOA's personal property. In building the fence, ZAFCOA exercised its discretionary authority, with a good faith basis arising from the Agreed Judgment entered in 03-1901-CV.

Despite the clear legal authority for the fence at the time it was constructed, Appellants and/or their associates repeatedly damaged, destroyed, removed or otherwise tampered with the subject fence. As a result, ZAFCOA filed suit in

---

[6] Footnotes 3 and 4 of Appellants' Brief correctly states that the pleading containing the history of the 2003 litigation was omitted from the Clerk's Record filed in this cause. However, copies of the Agreed Final Judgment and mediated settlement agreement signed by the parties appear in Volume 10 of the Reporter's Record, and are cited in this brief.

6

Guadalupe County District Court on November 6, 2008 [CR 97], and was shortly thereafter awarded injunctive relief preventing further damage to or alteration of the subject fence [SCR 2-3; SCR 4-5].

Throughout this litigation – including during a short stint at arbitration -- Appellants' opposition to (and destruction of) the fence stemmed from their claims that the fence precluded them from using the Association's privately-owned roadway and taxiway (referred to as "Lot 119" in the subdivision Plat) to access the un-platted "LRFD" property situated outside of the platted subdivision. Appellants have also argued against the validity of the Agreed Judgment that Golding requested to be entered by the Court in Cause No. 03-1901-CV. [RR V. 10 pp. 6-13].

In an effort to develop her claims related to the fence whose construction she had agreed-upon in the 2003 lawsuit [RR V. 10 pp. 6-13], Appellant Golding materially misrepresented to the trial court (and to ZAFCOA) her ownership of, and legal interests in, the LRFD. Once these material misrepresentations contained in pleadings and discovery materials were exposed, the Court determined that Golding should be sanctioned, with the sanction amount to be liquidated at a later date. [SCR 73-75][RR V. 7].

Thereafter, the parties amicably resolved the substantive issues presented in

this suit by way of an agreed Partial Summary Judgment [CR 880-888].[7] Following entry of the agreed Partial Summary Judgment, the only issues remaining for the trial court were a determination of the amount of sanctions to be assessed against Golding, and whether any party was entitled to an award of attorneys' fees. *Id.*

Eventually, the Court liquidated the amount of sanctions imposed against Golding by way of a Sanctions Order[8] [CR 969-980] and subsequently entered a Final Judgment that incorporated the terms of the agreed Partial Summary Judgment and the Sanctions Order, and taxed court costs and attorneys' fees against the party incurring same. [CR 1124-1126].[9]

## B. **Relevant Procedural History**

### 1. **Procedural History of the Merits of the Parties' Claims Relating to the Subject Fence**

On April 18, 2008, Appellants filed a lawsuit (Cause No. 08-0632-CV) in the 25th District Court of Guadalupe County, Texas, asserting claims for declaratory relief and "breach of declaration" against ZAFCOA. [CR 2-10]. In their Petition, Appellants sought, *inter alia*, recovery of attorneys' fees under Tex.Prop. Code § 5.006. *Id.* Notably, Appellants did not seek – and have never

---

[7] The agreed Partial Summary Judgment is attached as "Exhibit 3" to Appellant's Brief. In accordance with Tex.R.App.P. 9.7, it is adopted by reference herein.

[8] The Sanctions Order is attached as "Exhibit 1" to Appellant's Brief. In accordance with Tex.R.App.P. 9.7, it is adopted by reference herein.

[9] The Final Judgment is attached as "Exhibit 2" to Appellant's Brief. In accordance with Tex.R.App.P. 9.7, it is adopted by reference herein.

been awarded -- any temporary or permanent injunctive relief related to their complaints about the fence.

During the early pendency (and dormancy) of Cause No. 08-0632-CV, various individuals routinely and purposely damaged and altered the subject fence. As a result, ZAFCOA filed a separate lawsuit on November 6, 2008 (Cause No. 08-1872-CV) seeking injunctive relief to prevent damage or destruction to the subject fence.[10]

On December 15, 2008, the Court (in Cause No. 08-1872-CV) conducted a hearing on ZAFCOA's Application for Temporary Injunction following the fence being cut. [RR V. 2]. Following that hearing, the Court granted the Temporary Injunction, and also authorized ZAFCOA to replace and re-install those portions of the fence that had been damaged. *Id*.

On September 1, 2009 – after additional parties were joined in Cause No. 08-1872-CV -- the trial court, again, considered and granted an application by ZAFCOA for a Temporary Injunction preventing damage, destruction or alteration of the fence, and allowing destroyed sections of the subject fence to be restored (again). [RR V. 3 at pp. 61-65]. On September 2, 2009, the Court entered its "Order on Plaintiff's Motion for Temporary Injunction" to reduce to writing its rulings made from the bench on September 1, 2009. [SCR 4-5].

---

[10] As noted by Appellants in footnote 4 of their Brief, this pleading – although requested and designated by the undersigned attorney for Appellee – does not appear in the Clerk's Record.

On or about October 20, 2010, the two 2008 lawsuits were consolidated under Cause No. 08-1872-CV. [CR 108-110]. The consolidated case was referred to arbitration on October 20, 2010, with Thomas J. Smith appointed as arbitrator. [CR 108-110]. Thereafter, the parties were re-aligned such that ZAFCOA was the Defendant, and all other parties were aligned as Plaintiffs under in Cause No. 08-1872-CV. [CR 111-126].

Immediately upon referral to arbitration, Appellants sought to set-aside the trial court's then-year-old (September 2, 2009) Temporary Injunction validating and protecting the subject fence. On November 22, 2010, the Arbitrator considered Appellants' request, and entered an "Order Modifying Temporary Injunction and Granting Temporary Injunction" thereon. [CR 111-126]. In such Order – which was entered following a contested hearing and extensive briefing by the parties -- the Arbitrator expressly permitted the fence to remain in place. *Id.* Such ruling was consistent with the trial court's previous approval of the fence's construction.

Thereafter, the Arbitrator remanded – and the trial court accepted – the action back to Guadalupe County District Court upon a finding that the arbitration agreement between the parties (contained in the mediated settlement agreement of the 2003 lawsuit)[11] was void. [CR 118- 120].

Following remand, Appellants petitioned the trial court, again, for removal

---

[11] *See* [RR V.10 pp. 10-13].

10

of the fence on April 27, 2011. [CR 111-126]. Following a hearing that lasted for several hours – at which Golding testified in opposition to the fence -- the Court entered a "Judgment Confirming Arbitration Award, Granting Temporary Injunction and Aligning Parties" on May 11, 2011. [CR 111-126]. Thus, yet again, when presented with a request by Appellants to order the removal of the subject fence, the trial court declined the invitation, and instead adopted the following language in its Injunction Order:

> **"The Court DENIES Applicant's request for relief…require[ing] ZAFCOA to remove the fence in question during the pendency of this litigation; instead, this Court confirms and adopts the Arbitrator's Temporary Injunction…as this Court's Temporary Injunction, effective during the pendency of this suit."** *Id.*

Despite four (4) bites at the proverbial apple, Appellants *never* obtained any ruling or Order from any tribunal determining that the subject fence, or any act or omission of ZAFCOA, violated the Declaration/restrictive covenants. Rather, both the trial court and the Arbitrator to whom the action was referred consistently upheld the validity of the fence and insisted that Appellants not interfere with, remove or damage it.

Subsequently, Appellants and Appellee resolved their substantive disputes through negotiation, and jointly-petitioned the Court for entry of a Partial Summary Judgment whose express terms: (i) denied their respective claims for breach of contract (restrictive covenant): (ii) established that ZAFCOA owned the

11

subdivision's roadways; (iii) characterized such roadways as private property (and not public); (iv) recognized that, notwithstanding anything to the contrary contained-therein, Section Ten of the Declaration "authorizes [ZAFCOA] to restrict access to the subdivision by the erection of a fence;" and (v) expressly acknowledged that – *prior to entry of the Partial Summary Judgment* – ZAFCOA voluntarily removed the subject fence based upon its *unilateral determination* that the fence was "no longer desirable to the Association." [CR 880-888] (emphasis added). Said Partial Summary Judgment was entered by the Court on June 27, 2012. *Id.*

Approximately one and one-half years after entry of the parties' Agreed Partial Summary Judgment, Appellants filed their "Application for Attorney's Fees and Motion to Enter Final Judgment." An extensive hearing was conducted upon such Motion on March 26, 2014 [RR V.9]. Following such hearing, the trial court requested that all parties furnish the Court with materials and authorities supporting their respective positions concerning attorneys' fees, and took such Motion under advisement.

On May 21, 2014 – after having considered all of the evidence presented to it, and having presided over both every hearing in the case at bar and the lion's share of the parties' protracted litigation campaigns – the trial court determined that no party "prevailed" under any claim for breach of restrictive covenant. As

such, the trial court denied all parties claims for costs and attorneys' fees, and entered Final Judgment ordering that costs and fees be borne by the party incurring same. [CR 1124-1126]. In addition, the express terms of the Final Judgment adopted and incorporated the Partial Summary Judgment entered on June 27, 2012, as well as a Sanctions Order entered on October 31, 2013. *Id.*

Appellants did not file a Motion for New Trial, or any request to reform or modify the Final Judgment. Instead, this appeal was filed.

## 2. Procedural History of the Sanctions Award

On September 9, 2011, all parties filed substantial cross-Motions for Summary Judgment. [CR 166-187; CR 188-496; CR 501-540]. Appellants' Motion for Partial Summary Judgment appended, and was ostensibly supported by, extensive affidavit testimony offered by Dorothy Golding, and executed under oath on September 8, 2011. *Id.*

Similarly, Appellants' joint Response to ZAFCOA's Motion for Partial Summary Judgment, had attached (as "Exhibit A") Golding's "Affidavit In Opposition to Defendant's Motion for Summary Judgment." This "Response Affidavit" was executed by Golding on September 30, 2014, and filed with the Court on or about October 5, 2011. [CR 501-540].

Throughout a substantial portion of the time that this suit was pending (beginning with the "Plaintiff's Second Amended Petition" filed on September 10,

2010 [CR 99-107]), Golding made material misrepresentations about the status of her ownership of the LRFD. These representations continued throughout the discovery period -- in response to written discovery propounded by ZAFCOA and in deposition -- and were never corrected until the time that ZAFCOA disclosed Golding's misconduct to the Court in October, 2011 [CR655-726]. Even in Appellants' Fourth Amended Original Petition filed on July 1, 2011 [CR 127-139], Appellants affirmatively (and falsely) represented and alleged that Dorothy Golding was the legal owner of two tracts of land (comprised of 10.21 acres and 19.138 acres, respectively) which were:

(i)     situated in the unplatted Lands Reserved for Future Development;

(ii)    subject to existing and active Contracts for Deed in favor of James MacIvor (who was alleged to be the "equitable owner" of such tracts);

(iii)   benefitted by "express easement appurtenant" language contained within the Contracts for Deed in favor of MacIvor (which language allegedly "references language in an earlier Contract for Deed from Dorothy Golding to her daughter, Glenda Cupit); and

(iv)    Not the subject of any "warranty deed" executed by Dorothy Golding. *Id.*

Based upon the fortuitous discovery by ZAFCOA in October 2011 of the existence of previously-undisclosed document conveying interests in the LRFD

14

*away from* Golding, ZAFCOA objected to and moved to strike Golding's affidavit testimony from the summary judgment record. [CR 655-726]. Following ZAFCOA's request for court intervention, Appellants – for the first time – produced a *General Warranty Deed dated May 28, 2009, from Dorothy Lee Buffington[12] to James P. MacIvor which was recorded at V2749 P0858 of the real property records of Guadalupe County* as a "Supplemental Summary Judgment Response Exhibit" (Exhibit No. 6) on October 19, 2011. [CR 819-861; CR 731-818]. This instrument was clearly responsive to discovery requests propounded by ZAFCOA, but never produced by Appellants. Moreover, this same deed clearly contradicted Golding's prior deposition testimony, and undermined Appellants' claims and contentions in the litigation, including those related to Golding's ownership of the various tracts of land implicated in the lawsuit.

On December 7, 2011, the trial court conducted a hearing on ZAFCOA's Objections to Evidence (including Golding's sworn summary judgment and summary judgment response affidavits) [CR 655-726]. Although present in the courtroom during that hearing, Golding declined to testify in her own defense. [RR V. 7]. Several months later (on September 17, 2012), the trial court entered its written "Order on Defendant's Objections to Summary Judgment Evidence." [SCR 73-75]. In that Order – which resulted from the hearing conducted on December 7,

---

[12] As stated on page 4 (Statement of Facts) of Appellant's Brief, Dorothy Golding was, at one time, married to Robert Buffington. As such, "Dorothy Buffington" is the same person as Appellant, Dorothy Golding.

2011 -- the trial court found that Dorothy Golding should be sanctioned for various litigation and discovery abuses, but reserved the amount of sanctions for later determination upon an evidentiary hearing. *Id.*

On September 16, 2013, the trial court conducted a hearing (upon ZAFCOA's Motion) for the purpose of considering and liquidating the amount of attorneys' fees and costs to be assessed against Golding as a sanction for the litigation abuses and misconduct she was previously determined to have committed. [RR V. 8]. Following that hearing (which Golding failed to attend and declined to cross-examine ZAFCOA's proffered testimony), the Court, on October 31, 2013, entered a Sanctions Order awarding ZAFCOA $30,528.00 as a sanction against Golding. [CR 969-980].

Golding never requested that the trial court reconsider, vacate or otherwise modify the Sanctions Order, or conduct a re-hearing on ZAFCOA's request for sanctions.

## SUMMARY OF THE ARGUMENT

The Final Judgment and the Sanctions Order entered by the trial court should both be affirmed because the applicable law, the facts, and the evidentiary record support them in this case.

The Final Judgment properly assessed attorneys' fees against the party incurring same because no party "prevailed" in its claim for breach of restrictive covenant. Rather, the Court expressly denied Appellants' claim for breach, at the

16

joint request of all parties. That denial expressly incorporated a Take Nothing Judgment on the Appellants' claim for breach of restrictive covenant. Further, Appellants did not "prevail" in their claims for breach of restrictive covenant because the court awarded them no relief, nothing of any value, and no damages on their claim for breach of restrictive covenant. Likewise, the Court never made any finding that Appellee violated any restrictive covenant. To the contrary, the Court repeatedly affirmed ZAFCOA's right to construct and maintain the fence.

The trial court did not abuse its discretion in imposing sanctions against Appellant Golding because it acted with reference to guiding rules and principles. The evidentiary record before the trial court supports the sanctions award, and contains no exculpatory evidence to demonstrate that Golding acted in good faith or for proper purpose in providing false testimony and filing knowingly false pleadings. In addition, Golding has waived any challenge to the excessiveness of the sanctions award by failing to raise that issue in the trial court, or at any time prior to this appeal.

## ARGUMENT AND AUTHORITIES

I. **The Trial Court Properly Denied Appellants' Request for Attorneys' Fees Because Appellants were not a "Prevailing Party" in the Trial Court**

**A. The Trial Court Expressly DENIED Appellants' Claims for Breach of Restrictive Covenant and Rendered a TAKE NOTHING Summary Judgment.**

In their Opening Brief, Applicants artfully and selectively quote the

provisions of the Partial Summary Judgment entered by this Court on June 27, 2012. However, Applicants completely ignore Paragraph 3, which specifically addresses the parties' competing claims for breach of restrictive covenant. That provision provides:

> **"Plaintiffs' claims and Defendant's counterclaim for breach of contract (Restrictive Covenant) are hereby DENIED, and it is ORDERED, ADJUDGED and DECREED that all parties take nothing by way of their claims for breach of contract asserted in this suit, except as contemplated by Section 6 below."** [CR 971].

This paragraph of the agreed Partial Summary Judgment is the provision most relevant to this Court of Appeals' analysis because it contains the trial court's express adjudication of the merits of the parties' competing claims for violation of the applicable Declaration. In their Brief, Appellants reference various other sections of the Partial Summary Judgment in an effort to bootstrap a fallacious argument that they somehow "prevailed" in their claims for breach of restrictive covenant. However, the express language of Paragraph 3 quashes that argument, and is determinative of the parties' claims for attorneys' fees under Section 5.006 of the Property Code.

A prevailing party is the party to a suit that either successfully prosecutes the action or defends against it, prevailing on the main issue. *Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc*., 149 S.W.3d 863, 867 (Tex.App.-Dallas 2004, no pet.); *FDIC v. Graham*, 882 S.W.2d 890, 900 (Tex.App.-Houston [14th

18

Dist.] 1994, no writ). "Simply stated, the prevailing party is the party vindicated by the judgment rendered." *Jakab*, 149 S.W.3d at 867; *Dear v. City of Irving*, 902 S.W.2d 731, 739 (Tex.App.-Austin 1995, writ denied).

Based upon the express language of Paragraph 3 of the Partial Summary Judgment, and the appearance of the signature of Applicants' attorney on the Partial Summary Judgment, itself, it is obvious that Applicants did not prevail on their claims for breach of restrictive covenant because they settled such claims in such manner as the Court DENIED such claims and Ordered that they TAKE NOTHING. As such, Applicants' claim for breach of restrictive covenant -- the only claim that would entitle them to a mandatory award of attorneys' fees under Section 5.006 -- was not "vindicated," but rather, expressly rejected by the trial court.

**B.** **The Relief, If Any, Obtained By Appellants Was Not Based on Court Determination of Breach of Any Restrictive Covenant**

A Court may properly deny an applicant's request for attorney's fees when such applicant is not the prevailing party in a lawsuit. *See Anderson v. New Prop. Owners' Ass'n of Newport, Inc*., 122 S.W.3d 378, 390 (Tex.App.-Texarkana 2003, pet. denied); *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 291-92 (Tex.App.-San Antonio 1999, pet. denied); *Meyerland Cmty. Improvement Ass'n v. Belilove*, 624 S.W.2d 620, 620-21 (Tex.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.).

19

In ***Intercont'l Group P'ship v. KB Home Lone Star, L.P.***, 295 S.W.3d 650 (Tex.2009), the Texas Supreme Court undertook to define "prevailing party" in the context of a mandatory fee-award contract that did not define the term "prevailing party." In that case, a jury found that Intercontinental had breached a written contract mandating a fee award, but answered "0" on damages while awarding KB Home $66,000.00 in attorneys' fees. *Id.* at 652-53. Deferring to United States Supreme Court precedent, the Texas Supreme Court held that to be a prevailing party entitled to recover fees, "a claimant must obtain actual and meaningful relief, something that materially alters the parties' legal relationship." *Id.* at 652 (citing ***Farrar v. Hobby***, 406 U.S. 103, 111-12 (1992)). In this case, Appellants were not awarded damages on their claim for breach of restrictive covenant. Instead, the trial court expressly denied that claim.

Appellants argue in their Brief that they were afforded *some relief* relative to the fence, and therefore "prevailed" because the "ultimate relief sought was removal of the offending fence." Thereafter, Appellants cite a string of cases that analyze, on a global basis, whether a party prevailed under *any* cause of action, claim or theory of recovery it asserted for the purpose of a fee award. This "shotgun" analysis is inappropriate however, because of the "rifle-shot" scope of the Section 5.006 of the Texas Property Code.

Unlike a contract that provides for a fee award to a party who prevails in *any*

claim or dispute arising from that contract or the parties' relationship, Section 5.006 limits its mandatory fee award provision to parties who prevail in actions "based on breach of a restrictive covenant." Tex.Prop. Code § 5.006. Therefore, when the trial court expressly DENIED Appellants' cause of action for "breach of restrictive covenant" and ordered that they TAKE NOTHING thereon, it is undeniable that their entitlement to a mandatory award of attorneys' fees under Section 5.006, likewise, perished.

Only a party who successfully prosecutes a claim alleging a breach of a restrictive covenant is entitled to an award of attorney's fees under section 5.006. *Meyerland Cmty. Improvement Ass'n v. Belilove*, 624 S.W.2d 620, 620-21 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref. n.r.e.). There was no liability finding from the trial court (or the Arbitrator) that Appellee breached a restrictive covenant found in the applicable Declaration; thus, Appellants are clearly not entitled to recover attorneys' fees under Section 5.006 because they have not successfully prosecuted a claim alleging breach of a restrictive covenant. *See Id*.; *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.,* 122 S.W.3d 378, 390 (Tex. App.-Texarkana 2003, pet. denied); *Pebble Beach Prop. Owners' Ass'n v. Sherer,* 2 S.W.3d 283, 291-92 (Tex. App.-San Antonio 1999, pet. denied);

Assuming, *arguendo*, that Appellants did receive *some* relief through the

Agreed Partial Summary Judgment,[13] it is inescapable that any such relief was not based upon Appellants' cause of action for "breach of restrictive covenant."[14] Quite the contrary, the trial court specifically ordered that Appellants would "Take Nothing" on such claim. [CR 880-886]. Thus, to the extent that Appellants received any relief whatsoever, (including declaratory relief, for example) they still did not prevail in an "action based on breach of a restrictive covenant." As such, Tex.Prop. Code § 5.006 was not implicated, and the trial court had no statutory obligation to award any party attorneys' fees.[15] Thus, the trial court did not err in denying Appellants' application for attorneys' fees under Section 5.006.

### C. Every Substantive Order Entered in The Litigation Authorized, Validated and Protected the Fence Erected by the Association

During the pendency of this suit, the District Court considered the legality of the subject fence on four occasions. Likewise, the Arbitrator considered the legality of the fence at Appellants' request. In each of these instances, the presiding official (determiner of issues of law) issued a ruling authorizing the fence, and rejecting requests by Appellants to order it removed. [SCR 4-5; CR 111-126].

---

[13] Appellee does not concede this fact. Rather, the Agreed Partial Summary Judgment expressly provides that the Court had received into evidence a Resolution by Appellee in which Appellee unilaterally determined that the fence was no longer desirable to it, and had, resultantly, removed the fence prior to entry of the Agreed partial Summary Judgment.

[14] When Appellants' counsel executed the Partial Summary Judgment to indicate Appellants' approval of the "Form and Content" of the document, Appellants affirmatively petitioned the Court to determine that **no party** prevailed in its cause of action for breach of restrictive covenant, and that all relief requested by all parties under that claim should be wholly denied.

[15] The Declaratory Judgments Act, Tex. Civ. Prac. & Rem.Code Ann. § 37.001 *et seq.*, provides that a trial court *may* award costs and reasonable attorney's fees when doing so is equitable and just. To the extent that Appellants requested a fee award under the UDJA, the trial court was within its sound discretion in denying such a discretionary award.

22

Shortly after this suit was filed on November 6, 2008, the trial court entered a Temporary Injunction preventing the then-Defendants from tampering with or altering the fence made the subject of the Association's claims in this suit. [RR V. 10 pp. 16-159 (Court Ruling on p. 151).] Again, on September 2, 2009, the trial court entered a Temporary Injunction ("Order on Plaintiff's Motion for Temporary Injunction"), which expressly prohibited destruction of the fence, and authorized the construction of additional portions thereof. [SCR 4-5]. This Injunction was entered following a contested hearing, during which then-Defendants adamantly opposed the erection and maintenance of the subject fence. [RR V.3].

On November 22, 2010, Thomas J. Smith -- the Arbitrator to whom this case was referred – entered yet another Temporary Injunction, which modified this Court's Injunction entered on September 2, 2009. By way of his "Order Modifying Temporary Injunction and Granting Temporary Injunction," the Arbitrator permitted the fence to remain in place. [CR 111-126].

The Applicants' request for removal of the fence came before the Court once again on April 27, 2011, during a hearing that lasted several hours. Following that hearing – at which at least one of the Applicants provided testimony in opposition to the fence -- the Court entered a "Judgment Confirming Arbitration Award, Granting Temporary Injunction and Aligning Parties" on May 11, 2011. [CR 111-126]. Once again, when presented with a request by Applicants to order the

23

removal of the subject fence, this Court declined, and adopted the following language in its Injunction Order:

> **"The Court DENIES Applicant's request for relief…requir[ing] ZAFCOA to remove the fence in question during the pendency of this litigation; instead, this Court confirms and adopts the Arbitrator's Temporary Injunction…as this Court's Temporary Injunction, effective during the pendency of this suit."**

Thus, notwithstanding multiple attempts, Applicants and their co-parties/affiliates never obtained any Order from the trial court or the arbitrator determining that the ZAFCOA violated the applicable restrictive covenant. Rather, the trial court and arbitrator consistently upheld the validity of the fence, and enjoined any damage to or destruction of it. Given these rulings, Applicants have clearly not prevailed in their claims that ZAFCOA breached the applicable restrictive covenant.

### D. All Parties had Legitimate Interests to pursue.

ZAFCOA filed and maintained its lawsuit seeking, among other relief, judicial declarations concerning the legality of constructing a boundary fence as contemplated by Section Ten of the Declaration, and the ability to regulate access to and control over the subdivision and its roadways, runway and other common areas. [CR 49-68]. In addition, ZAFCOA alleged that Appellants breached the applicable restrictive covenants. *Id.* The Court's Agreed Partial Summary Judgment entered on June 27, 2012, vindicated many of the Association's claims,

24

as follows:

- ZAFCOA's claim that Lot 119 is not a public roadway, but rather, a private roadway owned by the Association;
- That this Court's Order Agreed Order entered on April 6, 2006 was intended, in part, to permit construction of the fence;
- That ownership of property outside of the platted subdivision (and specifically in the "Lands Reserved for Future Development") does not confer membership in the Association and/or any right to use the Association's runway; and
- That Section Ten of the applicable Declaration authorizes the Association to restrict access to the subdivision by the erection of a fence; including a perimeter/boundary fence. [CR 880-888].

Based upon these prior determinations by the Court, it is readily apparent that ZAFCOA had legitimate interest to pursue in this lawsuit, and actually prevailed in protecting those interests. In instances where, as here, both parties to a dispute involving the alleged breach of a restrictive covenant have legitimate interests to pursue, a trial court may, in its discretion, decline an award of attorneys' fees. *See Brooks v. Northglen Ass'n.*, 141 SW 3d 158 (Tex. 2004).

**II.** **The Trial Court Properly Imposed Sanctions on Golding, and Did Not Abuse its Discretion, Based Upon Clearly-Established Misconduct as a Litigant**

Most important to Golding's appeal of the sanctions imposed against her is the standard applicable to this Honorable Court of Appeals' analysis in this case. That standard, which was articulated by the Texas Supreme Court in *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004), provides that the trial court may be reversed *only* if it acted "without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." Thus, the imposition of sanctions, and the amount thereof, are limited only by the duty of the trial court to act within its sound discretion upon consideration of the relevant factors described in *Low*, 221 S.W.3d 620-21, and the provisions of Texas Rule of Civil Procedure 215, Texas Rule of Civil procedure 166a, and Texas Rule of Civil Procedure 13.

As set-forth below, the trial court was presented with ample evidence of Golding's misconduct, and Golding failed to tender exculpatory documents or testimony to rebut that evidence. The Sanctions Order, itself, contains lengthy Findings of Fact and Conclusions of Law, and expressly addresses the considerations required of a trial court when assessing sanctions. As such, the Sanctions Order facially demonstrates that the Court did not act arbitrarily or unreasonably in imposing non-death penalty sanctions against Golding.

Finally, Golding has waived any challenge to the excessiveness of the sanctions imposed against her by failing to present that issue to the trial court. She cannot raise that issue for the first time on appeal.

### A.      Golding Failed to Produce any Evidence to Rebut Evidence of Her Misconduct, or that Demonstrated Good Faith

Appellants attack the sufficiency of the evidence demonstrating that Golding's conduct was sanctionable and assert that such a determination required additional evidence or testimony than was presented to the trial court. However, when ZAFCOA first brought Golding's perjury to the Court's attention through its "Objections to Summary Judgment Evidence" filed on October 19, 2011 [CR 655-726], the Court already had before it the entire summary judgment record by virtue of the parties' previously-filed Cross-Motions for Summary Judgment and Responses. [CR 166-187; CR 188-496; CR 501-540; CR 577-589; CR 590-642].

In addition, ZAFCOA's "Objections to Summary Judgment Evidence" cited and appended as exhibits additional evidence of Golding's perjury and groundless pleadings, including a deed whose existence Appellants had failed to disclose [CR 655-726], and excerpts from Golding's prior deposition testimony rendered in this suit. *Id*. Most importantly, as expressly reflected in the Sanctions Order, the trial court took judicial notice of numerous pleadings, instruments, and file contents – all of which are identified in the Sanctions Order. [CR 969-980]. These pleadings included the various (original through Fourth Amended) petitions filed by Golding

and her affiliated entity, Zuehl Land Development, [CR 99-107; CR 127-139].

Accordingly, at the time of the December 9, 2011 hearing [transcribed in RR V. 7], and most certainly by October 31, 2013 (the date of entry of the Sanctions Order), the Court had before it substantial evidence of Golding's bad faith, including her offensive affidavits, groundless pleadings and false deposition testimony, and even a "Supplemental Affidavit" in which Golding purported to offer "corrected" testimony and differed materially from the testimony initially offered in connection with her Motion for Summary Judgment and her deposition. [CR 819-861]; [RR V7 p. 10]. Likewise, the Court received – without challenge or objection – substantial testimony and documentary evidence of ZAFCOA's reasonable and necessary out-of-pocket expenses and attorneys' fees resulting from Golding's misconduct. [RR V 8 pp. 9-25]; [RR V. 10 pp. 44-100].

Despite this substantial evidentiary record before the trial court when it considered imposing santions, Golding failed to tender a single witness, document or other record (other than her own "corrected" Affidavit) demonstrating any valid or good faith basis for her prior testimony, or any evidence that the testimony was not false when made. Instead, as echoed in her Appellant's Brief, Golding's counsel attempted to divert the trial court's attention away from her intentional perjury by arguing that her falsehoods were "immaterial" to the facts and issues presented in the litigation. [RR V7 pp. 28, 33, 37, 52, 63].

Appellees acknowledge the judicial presumption that pleadings and other papers are filed in good faith, as set-forth in *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex.1993). However, ZAFCOA clearly overcame this presumption and presented the Court with abundant evidence that Golding knew that she had deeded the property in question to a third-party (MacIvor) on May 28, 2009, and, similarly, that she knew that a General Warranty Deed reflecting such conveyance existed since that time. Yet, despite this knowledge, Golding persisted for 2 years in filing multiple petitions, filing a summary judgment motion and response, offering deposition testimony, answering written discovery, and offering affidavit testimony that was designed to misrepresent the true ownership of the lands in question, and falsely claim that she was the owner of the property she had unmistakably conveyed to MacIvor.

Once the presumption of good faith pleadings was overcome by ZAFCOA's "Objections to Summary Judgment Evidence" and attached exhibits [CR 655-726], Golding's failure to tender exculpatory evidence or offer a good faith basis for her misstatements properly resulted in the Court finding that bad faith existed on her part, that she had taken a groundless position in the suit, that she had offered false testimony, and that she should be sanctioned. [SCR 73-75] [RR V. 7]. This ruling should not be disturbed because the trial court's discretionary sanctions award is clearly supported by the evidence. *See Unifund CCR Partners v. Villa*, 299

S.W.3d 92, 97 (Tex. 2009); *Nath v. Texas Children's Hosp*., 2014 Lexis 756.

**B.** **Although Present When the Court was Considering the Bad Faith and the Imposition of Sanctions Against Her, Golding Declined to Testify in her Own Defense or Call Any Witnesses**

In the introductory portion of Section II of their Brief, Appellants argue that the trial court acted unjustly and abused its discretion in sanctioning Golding because there was no affirmative showing of bad faith on Golding's part. In support of that assertion, Appellants make extensive reference to the transcript of the hearing conducted on September 16, 2013 and contained in Volume 8 of the Reporter's Record [RR V. 8]. Notably, however Appellants failed to make any mention, whatsoever, of the lengthy hearing conducted on December 9, 2011, and transcribed in Volume 7 of the Reporter's Record [RR V. 7]. This is not accidental.

In what can only be characterized as a "litigation strategy," Golding did not bother to appear at the September 16, 2013 hearing that was conducted solely to determine *the amount* of attorneys' fees to be awarded to Appellee. [RR V. 8]. Thus, by her non-attendance, Golding purports to construct the argument that the trial court lacked sufficient evidence of her motives for her bad faith and perjurious summary judgment affidavits and deposition testimony. That is, Golding argues in the Appellant's Brief that she was, in some manner, denied due process because she failed to offer a defense or otherwise explain her misconduct. Alternately, she incorrectly suggests that the absence of her testimony deprived the Court of

sufficient evidence to determine her bad faith.

Despite numerous references to the September 16, 2013 hearing to liquidate the sanctions award (at which Golding was absent but represented by counsel), Appellants conveniently ignore the fact that Golding was physically present in the Courtroom during the hearing at which the Court actually determined the existence of bad faith – on December 9, 2011. [RR V. 7 at p. 59-60]. During that lengthy hearing Golding, perhaps somewhat wisely, declined to testify in her own defense or even suggest a good faith basis for her false testimony. [RR V. 7]. She also failed to call any other witnesses. *Id.*

This declination is not surprising, given the fact that—at the time of the hearings related to sanctions (including on December 9, 2011) -- Golding was already serving a term of criminal probation from a prior perjury charge that arose from her false testimony in other litigation concerning her activities as the subdivision's developer [SCR 956-968].[16] As such, during the December 9, 2011 hearing, the trial court advised Golding's counsel to admonish her of her Fifth Amendment rights. [RR V. 7 at pp. 59 -- 60]. Ostensibly, Golding heeded this warning and did not offer any testimony – of herself or any other person – at the December 9, 2011 hearing where the Court first determined her bad faith and other

---

[16] One factor articulated by the Texas Supreme Court in assessing sanctions is "any prior history of sanctionable conduct on the part of the offender." *See **Low v. Henry**,* 221 S.W.3d 609, 620-21, n. 5. Given her history as a litigant and criminal Defendant in the Guadalupe County District Courts, Judge Steel is keenly aware of Golding's propensity for deception.

misconduct. [RR V. 7].

Likewise, once discovered, Golding – even in her Appellant's Brief – has never suggested that her deposition and the affidavit testimony she rendered (twice) were true; instead, she simply characterizes such testimony as "incorrect."[17]

C. **Golding Has Waived Any Objection to Excessiveness of the Sanctions Award by Failing to Raise That Issue in the Trial Court.**

Golding did not file any Motion for New Trial, or to modify or reform the trial court's Sanctions Order (or the Final Judgment incorporating such sanctions). Likewise, she did not request a re-hearing on the sanctions determination. Golding also failed to argue in any pleading filed in the trial court that the sanctions assessed against her were excessive. By failing to raise the issue of excessiveness with the trial court, Golding failed to preserve this issue for appellate review. *See* TEX.R.APP.P.33.1(a).

Similarly, in addition to failing to provide exculpatory evidence or testimony, Golding failed to challenge, object-to, or even cross-examine Appellee's testimony and evidence relating to the amount of attorneys' fees and costs incurred by ZAFCOA. [RR V 8 pp. 9-25]. These failures to object amount to a waiver of any challenge to the excessiveness of the sanctions award because, in order to merit appellate review, an objection must be clear enough to give the trial court an opportunity to correct the asserted error. *See **Arkoma Basin Exploration***

---

[17] *See* Appellant's Opening Brief at pp. 37-38.

*Co. v. FMF Assocs. 1990-A, Ltd*., 249 S.W.3d 380, 387 (Tex. 2008). Thus, Golding has waived any right to challenge the excessiveness of the amount of sanctions imposed by the trial court for her litigation misconduct.

**D. The Trial Court Did Not Abuse Its Discretion In Sanctioning Golding Based Upon the Seriousness of Golding's Violations**

Appellate Courts in Texas must review the imposition of sanctions under an abuse of discretion standard. *Low,* 221 S.W.3d at 614 (Tex. 2007). In determining whether a trial court abused its discretion, a court of appeals must decide whether the trial court's action was arbitrary or unreasonable. *Id.*; *Cire*, 134 S.W.3d at 838–39 (Tex. 2004). A Court of Appeals cannot conclude that a trial court abused its discretion merely because it would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

In Appellant's Brief, Golding has failed to identify any evidence that would tend to indicate that her pleadings, offensive affidavits and/or deposition testimony were not: (i) groundless and brought in bad faith in violation of Texas Rule of Civil Procedure 13; (ii) unjust or inappropriate as the result of her abuse of discovery under Texas Rule of Civil Procedure 215; and/or (iii) made in good faith, as required by Texas Rule of Civil Procedure 166a(h). Moreover, Golding improperly suggests, without saying, that the sanctions imposed against her were

case-determinative. Clearly they were not, as she seeks a holding from this Court that she was the "prevailing party" in the trial court.

### 1.    Sanctions Under Texas Rule of Civil Procedure 13

Rule 13 provides that pleadings that are groundless and in bad faith, intended to harass, or false when made are sanctionable. *See* TEX. R. CIV. P. 13. The very purpose of Rule 13 is to check abuses in the pleading process. *See McCain v. NME Hosps., Inc.,* 856 S.W.2d 751, 757 (Tex. App.-Dallas 1993, no writ).

In its Sanctions Order, the trial court entered highly-detailed and chronological Findings of Fact & Conclusions of Law expressly determining that Golding violated Rule 13, that her deposition and affidavit testimony were "knowingly and intentionally" false, and that her pleadings asserted "groundless legal arguments." Thus, the trial court clearly determined that Golding's pleadings and challenged affidavits were <u>both</u> groundless <u>and</u> made in bad faith / false when made. The Court also cited numerous factors upon which it made its determinations of falsehood and groundlessness, including the following:[18]

> 23. Golding's bad faith is evidenced by the fact that she failed to disclose the existence of the May 28, 2009 General Warranty Deed to her attorney of record in this cause, William D. Crist. According to pleadings filed herein, Mr. Crist has represented Golding since at least 2008, but has

---

[18] Although not cited by the trial court in the Sanctions Order, the fact that Golding had an attorney other than her current counsel (who actively represented her in 2009) draft the undisclosed General Warranty Deed dated May 28, 2009 is suspicious and bears consideration with regard to analyzing her "bad faith."

denied knowledge of the existence or contents of the May 28, 2009 General Warranty Deed until such document was produced by the Association as an Exhibit to "ZAFCOA's Objection To and Motion to Strike Summary Judgment Evidence and Summary Judgment Response Evidence."

24. Golding's bad faith is further evidenced by the fact that Golding executed the General Warranty Deed conveying the property to MacIvor, and caused such deed to be recorded, ***prior to*** each and all of the following:

   a. the time that Golding executed an Affidavit supporting Plaintiffs' Response to the Association's Plea to the Jurisdiction filed in Cause No. 08-0632-CV (September 10, 2010);

   b. the time that Golding caused Plaintiffs' Third Amended Original Petition to be filed in Cause No. 08-0632-CV (September 10, 2010);

   c. the entire pendency of the arbitration proceedings conducted in this cause;

   d. the time that Golding caused Plaintiffs' Fourth Amended Original Petition to be filed in this Cause (July 1, 2011);

   e. the time that Golding rendered her sworn deposition testimony in this cause (September 2011);

   f. the time that the Golding served responses to the Association's Requests for Production propounded in this cause (September 30, 2011);

   g. the time that the Golding Plaintiffs served their responses to the Association's Requests for Disclosure propounded in this cause;

   h. the time that Golding rendered her sworn Affidavit testimony in support of Plaintiffs' joint Motion for Partial Summary Judgment (September 8, 2011); and

i. the time that Golding rendered her sworn Affidavit testimony in connection with Plaintiffs' Response to ZAFCOA's Motion for Partial Summary Judgment (September 30, 2011).

26. Golding's bad faith is further evidenced by the fact that her affidavit testimony rendered in connection with the parties' cross-motions for summary judgment is largely consistent with the affidavit testimony of James MacIvor (a co-Plaintiff and grantee under the subject deed) rendered on September 6, 2011 and September 30, 2011. In their Affidavits, which were jointly submitted to the Court, both MacIvor and Golding failed to disclose the existence of the General Warranty Deed dated May 28, 2009, but expressly referenced the contracts for deed which were superseded by such deed. This corroborating omission and misrepresentation suggests a collaborative effort by the Plaintiffs, including Golding, to conceal the existence of the General Warranty Deed dated May 28, 2009 from the Court and the Association.

27. Golding's bad faith is further evidenced by the fact that, at the time that she signed the summary judgment affidavits containing the false statements referenced herein, Golding was actively serving a sentence of criminal probation based upon her plea of "Guilty" to the charge of Perjury in Case No. 09-0024-CR, filed in the same county and judicial district as this cause.

28. Golding's bad faith is further evidenced by the filing of her "corrected affidavit" (dated October 24, 2011) disclosing the existence of the General Warranty Deed, but only after the existence of such document was brought to the Court's attention by the Association. [CR 974-977].

All of these findings meticulously cited in the Sanctions Order are buttressed by evidence in the record, and, therefore, support sanctions awarded under Rule 13.

The Court also met both prongs of the due process test set-forth in *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)

by (i) establishing a direct nexus between the offensive conduct (false affidavit and deposition testimony and groundless legal arguments asserted in pleadings for more than two years), Golding as the offender, and the sanction award; and (ii) tempering the proportionality of the punishment relative to Golding's misconduct.[19] That is, the trial court was deliberative in its analysis and entered an appropriate sanction (approximately half of the more than $60,000.00 in attorneys' fees claimed by ZAFCOA) that was expressly directed against Golding's abusive conduct with an eye toward remedying the prejudice caused to ZAFCOA (as the innocent party).

Likewise, the trial court considered less stringent sanctions than the amount ultimately assessed against Golding, but expressly determined that "[l]ess stringent sanctions than those imposed…would not fully promote Golding's future compliance with her obligations as a litigant." In that regard, the trial court determined that Golding -- a repeat offender who had already been criminally prosecuted for perjury and a known litigant in several cases filed in the Guadalupe County district courts -- necessitated a sanction that satisfied the legitimate purposes of securing future compliance with the relevant rules of civil procedure, punishing her violations, and deterring other litigants from similar misconduct. These are appropriate objectives of a just and sanctions award. *See **Spohn Hosp. v.***

---

[19] As set-forth above, ZAFCOA maintains that Golding has waived any right to challenge the sanction award on "excessiveness" grounds because that issue was not presented to the trial court.

*Mayer,* 104 S.W.3d 878, 882 (Tex. 2003).

The trial court, clearly, could have imposed more severe sanctions, but did not. The sanction award imposed against Golding was not case-determinative, did not constitute "death penalty" sanctions, did not prevent a decision of the parties' claims in the merits, or even strike any of Golding's evidence other than her admittedly untrue affidavits. In short, the sanctions awarded against Golding under Texas Rule of Civil Procedure 13 were just, appropriate and not excessive. Moreover, they were supported by evidence, and therefore not assessed in an abuse of discretion. *See **Unifund***, 299 S.W.3d at 97.

**2.      Sanctions Under Texas Rule of Civil Procedure 215**

When a trial court finds a party has abused the discovery process, it is authorized to impose a sanction that is just under the circumstances. Tex. R. Civ. P. 215.3. The sanctions available under Rule 215 include "an order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party …" Tex.R. Civ. P. 215.2(b)(2).  Sanctions are used to assure compliance with discovery and deter those who might be tempted to abuse discovery in the absence of a deterrent. ***Cire***, 134 S.W.3d at 839.

When determining whether a sanction under Rule 215 is just, a court first considers whether there is a reasonable relationship between the abusive conduct and the sanction imposed.  ***Transamerican***, 811 S.W.2d 913, 917 (Tex. 1991)

Second, a court considers whether the sanction is excessive. *Id*. at 917.

In its Sanctions Order the trial court clearly articulated Golding's discovery obligations, including her obligation "to disclose the existence of" the Warranty Deed she concealed, to produce such instrument in response to ZAFCOA's written discovery requests, and to not testify falsely during her deposition examination in this case. The Court further examined the evidence of Golding's discovery abuses, and determined that she violated Rule 215 by failing to produce the Deed in question, and by falsely testifying in her deposition about ownership of the lands in question. [CR 972-979].

Having determined that Golding violated Rule 215, the Court imposed sanctions "in accordance with the Court's inherent power, and the provisions of Tex.R.Civ.P. 215.2(b) and 215.3," requiring that Golding shall pay to ZAFCOA, as a sanction, its reasonable expenses, including attorneys' fees, incurred in conducting the written discovery and deposition in which the discovery abuse occurred. [CR 978-79]. In furtherance of this award, the Court accepted into evidence uncontroverted testimony and documentary evidence related to ZAFCOA's reasonable expenses incurred as the result of Golding's violative conduct. [RR V 8 pp. 9-25]; [RR V. 10 pp. 45-100]. Because this award is supported by the evidence, and expressly authorized under Rule 215, no abuse of discretion occurred.

### 3. Sanctions Under Texas Rule of Civil Procedure 166a(h)

Texas Rule of Civil Procedure 166a(h) provides that the trial court may require a party who presents a summary judgment affidavit in bad faith "to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees[.]" Tex.R. Civ. P. 166a(h). In connection with its analysis of the propriety of sanctions under Rule 166a(h), the trial court found:

38. Dorothy Golding had an obligation under Texas Rule of Civil Procedure 166a to not present summary judgment affidavits in bad faith.

39. Golding's Summary Judgment affidavit and Summary Judgment Response affidavit were each materially false, and contained testimony that Dorothy Golding knew to be fictitious, groundless and presented in bad faith, in violation of Tex.R.Civ.P. 166a(h). Specifically, Golding's affidavit testimony described in paragraphs 15 and 16 hereof was knowingly and intentionally false at the time Golding filed her Affidavit in Support of Plaintiffs' Motion for Summary Judgment.

40. Golding's knowing and intentionally false testimony and groundless legal arguments asserted in pleadings were made for the purposes of and/or had the practical effect of frustrating and interfering the Court's core functions, including deciding questions of law presented by the parties. That is, Golding's false testimony rendered by way of affidavit and deposition significantly interfered with the Court's core judicial functions, including by making it impracticable for the Court to dispose of this suit by way of summary judgment. [CR 977-979].

As a result of the foregoing Findings of Fact/Conclusions of Law, the Court, in accordance with Tex.R.Civ.P. 166a(h) *and the Court's inherent power*, ordered Golding to pay, as a sanction, "reasonable expenses, including reasonable

attorney's fees, which the filing of her summary judgment and summary judgment response affidavits caused ZAFCOA to incur, including but not limited to all costs of drafting, filing and presenting ZAFCOA's Summary Judgment Response, ZAFCOA's Objection and Motion to Strike such affidavits from the summary judgment record, and ZAFCOA's Objection and Motion to Strike Golding's "Revised and Corrected" affidavit." [CR 978]. Such an award is expressly permitted by Rule 166a(h), and, accordingly, no abuse of discretion occurred.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellee, Zuehl Airport Flying Community Owners Association, Inc. asks this Honorable Court of Appeals to affirm the Sanctions Order and Final Judgment entered by the trial court. Appellee further prays for such other relief to which it may be entitled consistent with this Court's opinion, together with an award of attorneys' fees on appeal.

Respectfully submitted,

_____/s/ *Robert L. Wilson III*___
**ROBERT L. WILSON III**
State Bar No. 50511773
**RL WILSON LAW**
111 W. Olmos Drive
San Antonio, Texas 78212
(210) 223-4100 (Telephone)
(210) 223-4200 (Facsimile)
Email: rlw3d@sa-law.com

**ATTORNEY FOR APPELLEE, ZUEHL AIRPORT FLYING COMMUNITY OWNERS ASSOCIATION, INC.**

41

## CERTIFICATE OF COMPLIANCE WITH T.R.APP.P. 9.4(i)(3)

I certify that the this computer-generated Brief contains 11,267 words (including words contained in footnotes and headings). I have determined this number by utilizing the "Word Count" feature contained within the Microsoft Word computer program.

/s/ *Robert L. Wilson III*
ROBERT L. WILSON III

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellee's Brief has been served on the following counsel by electronic service and/or such method as is prescribed by Tex.R.App.P. 9.5. on January 9, 2015:

William D. Crist
The Crist Law Firm, PLLC
3123 NW Loop 410
San Antonio, Texas 78230

/s/ *Robert L. Wilson III*
ROBERT L. WILSON III